Marshall S. Driggs, Respondent, *v.* Robert J. Dean et al., Appellants.

1. Warehouse Receipts — Liability of Pledgee for Storage Charges. A person to whom a warehouse receipt has been transferred as collateral security is vested with a qualified title which gives him the right to take possession of the property upon the surrender and cancellation of the receipt, but since the owner may redeem and the right of possession is subject to the liens of the warehouseman for storage, the title is not absolute, and although, if he so elects, he may reduce the property to possession upon payment of the storage, he is not bound to do so or to pay the charges thereon.

2. When Question Whether Possession Has Been Taken of Property Is One of Fact. After payment of a guaranteed note and the receipt of warehouse receipts which had been held as collateral security therefor, the payor has the right to ascertain whether there is property on storage represented by the receipts, the amount of claims against the property for storage, whether it is merchantable and of value sufficient to warrant his taking possession and to send others to examine it for that purpose, and, upon the trial of an action to recover storage charges such examination cannot be construed as a taking possession of the property or as exercising acts of control and management thereof, but whether pos-

16

session actual.or constructive had· been taken or whether any act had been done indicating an intent to take the control and management of the property is a .question of fact.

*Driggs* v.· *Dean,* 38 App. Div. 630, reversed.

(Argued March 29, 1901; decided May 14, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 25, 1899, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. E. Warren* for appellants. No express contract having been proven, and the law not implying one to pay storage, the plaintiff was bound to establish by the acts of the parties that an implied contract existed, its extent and limitations, and this question was one of fact to be determined by a jury and not by the court, and the direction of a verdict was error. (*Herbert* v. *Ford,* 33 Me. 90 ; *Copeland* v. *Hall,* 29 Me. 93 ; *McKenzie* v. *Sykes,* 47 Mich. 294 ; *Farley* v. *Pettes,* 5 Mo. App. 262 ; *Colgan* v.. *Aymar,* Lalor Supp. 27 ; *Bartlett* v. *Tarbell,* 12 Allen [Mass.], 123 ; 1 Thomp. on Trials, § 1108 ; *St. Louis S. Y.* v. *Wiggins F. Co.,* 102 Ill. 514 ; *Patten* v. *Pancoast,* 109 N. Y. 627 ; *King* v. *Leighton,* 100 N. Y. 387 ; *Stokes* v. *Johnson,* 57 N. Y. 673.) The defendants would not be chargeable with storage simply by reason of the fact of their taking up·the Von. Angern note and receiving from the Chemical Bank the warehouse receipts which were pledged as collateral security for the payment of Von Angern's debt to the bank. (Colebrook on Col. Sec. §§ 413, 414 ; *Burton* v. *Duryea,* 40 Ill. 320 ; Jones on Pledges, § 281 ; *Western, etc., R. R. Co.* v. *Wagner,* 65 Ill. 97 ; *Hale* v. *Milwaukee Dock Co.,* 29 Wis. 488 ; *Blanchard* v. *Page,* 8 Gray, 295 ; *Yenni* v. *McNamee,* 45 N. Y. 614 ; *Whitlock* v. *Hay,* 58 N. Y. 487.) The transfer of the warehouse receipts by Von Angern, the owner, to the Chemical Bank as collateral security for the payment of his note, and the subsequent transfer to the

defendants, creates no liability upon the part of the defend-
ants to pay the storage unless they removed the goods, or did,
by their acts, exercise such control over the property as owners,
and to such an extent that by their acts they induced Driggs
to continue the storage on their credit ; and the mere transfer
of the warehouse receipts to the defendants as collateral
security for the payment of the note did not vest the title of
the goods in defendants as absolute owners, entitling plaintiff
to recover for the storage. ( *U. F. R. Co.* v. *Winkley,* 159
Mass. 133 ; *B. Lumber Co.* v. *Meffert,* 50 Mo. App. 437 ;
*Elder* v. *Hasche,* 31 N. W. Rep. 57 ; *Field* v. *Roosa,* 159
Mass. 128 ; *Hamill* v. *Gillespie,* 48 N. Y. 556 ; *Kilpatrick*
v. *Dean,* 3 N. Y. Supp. 60 ; *Habenicht* v. *Lissacht,* 77 Cal.
139 ; *Cox* v. *V. C. R. Co.,* 170 Mass. 129 ; *Finn* v. *Western
R. Co.,* 112 Mass. 530 ; *Blanchard* v. *Page,* 8 Gray, 295.)

*John Berry* for respondent.   The transfer of the warehouse
receipts by indorsement and delivery to the defendants, under
the terms of the receipts and conditions of storage, vested in
the defendants the legal title and right of possession of the
goods, and the plaintiff became their bailee, liable to them for
the proper care of the property, and thereafter held it subject
to their order and demand.   The relation of bailee and bailor
having been thus created between the plaintiff and the defend-
ants, the defendants became liable to the plaintiff to pay the
storage thereon after they became the owners of the property.
(*Driggs* v. *Dean,* 87 Hun, 319 ; Colebrook on Col. Sec.
§§ 413, 414 ; *Gibson* v. *Stevens,* 8 How. [U. S.] 384 ; *Hoyt* v.
*H. F. Ins. Co.,* 26 Hun, 416 ; 96 N. Y. 650 ; *Zellner* v. *Mob-
ley,* 84 Ga. 746 ; *De Wolf* v. *Gardner,* 12 Cush. 19 ; *Western
U. R. R. Co.* v. *Wagner,* 65 Ill. 197.) The defendants hav-
ing become the owners of the property and entitled to the pos-
session thereof, by the transfer and delivery to them of the
warehouse receipts, and having notified the plaintiff thereof
and assumed the ownership and possession of the property on
the 24th of October, 1885, and having made numerous efforts
to sell it and made their orders on the plaintiff for the inspec-

tion and examination of the same by the persons to whom they were endeavoring to sell it, and having allowed it to remain on storage, with plaintiff's consent, and the plaintiff having thus become their bailee for hire, holding the property for them subject to their order and liable to them for the proper care and storage thereof, the defendants, as bailors, became liable to him for such care and storage. (*Devereux* v. *Fleming,* 53 Fed. Rep. 401.)

HAIGHT, J.    This action was brought to recover storage on merchandise stored in the plaintiff's warehouse in the city of New York. The facts disclosed by the evidence are without substantial dispute. On the 28th day of March, 1885, one Max Von Angern placed in storage in the plaintiff's warehouse 2,463 barrels of what was claimed to be Portland cement, agreeing to pay for the storage at the rate of four cents a barrel per month. The plaintiff issued to him therefor two receipts, one for fifteen hundred barrels and one for nine hundred and sixty-three barrels. Thereafter, and on the 21st day of July, 1885, Von Angern procured the Chemical National Bank of New York to discount his promissory note for $3,500, guaranteed by the defendants, for three months, and pledged as collateral security for the payment of the note the two warehouse receipts issued by the plaintiff. When the note became due it was not paid by Von Angern and the bank called upon the defendants, as guarantors, to pay the same. They, thereupon, paid the note and the bank delivered it to them together with the two warehouse receipts. On or about the 24th day of October, 1885, the defendant Wills exhibited the warehouse receipts to the plaintiff and stated that he wished to examine the goods. He then went down into the cellar where the barrels were stored and commenced an examination. Before going into the cellar a bookkeeper of the plaintiff asked him if he should make out bills for the accrued storage, to which Wills replied, " Yes, you had better." The bills were accordingly made out to Von Angern and handed to Wills in the cellar while he was examining the

barrels. Subsequently, he sent several persons to examine the barrels and offered them for sale. On the 16th day of January thereafter, the defendants brought an action against the plaintiff in this action, and in their complaint alleged that the merchandise represented by the warehouse receipts issued to Von Angern were not barrels of Portland cement as described in the warehouse receipts and were not materials that could be used as cement; that the same was worthless and without intrinsic value; that it had been negligently cared for and stored, and that the plaintiffs had suffered damage in a sum equal to the amount of $3,500 with the interest that had accrued thereon, which they had been compelled to pay by reason of such negligence. That action finally resulted in a judgment dismissing the complaint, the court holding that inasmuch as the barrels received in storage in the defendants' warehouse had all the appearances and marks upon them indicating that they were packed with Portland cement, that the warehouseman was not negligent in issuing warehouse receipts without breaking open and ascertaining the contents of the packages, and that he was not chargeable with knowledge of their contents when they were not visible and open to inspection. (*Dean* v. *Driggs*, 137 N. Y. 274.) After the determination of that action this action was brought in which the plaintiff seeks to recover for the storage of the barrels during the pendency of that action. This case has been three times tried. Upon the last trial, after the testimony was closed, the plaintiff's counsel asked the court to direct a verdict in his favor for $9,468. The defendants' counsel, thereupon, asked to go to the jury. "*First.* Upon the whole case. *Second.* Whether or not the defendants did take possession of the goods. *Third.* Whether the defendants by any act or means did anything with the plaintiff or the goods which indicated the exercise of any ownership or control of the property, or that they would take possession of the goods, or that they would hold them or take control of them. *Fourth.* Whether the defendants did anything which induced Driggs to continue storing the barrels on the account of Dean & Co. *Fifth.* Whether or not the defendants did take actual possession of

the cement on the 24th day of October, 1885, or subsequent thereto." The court refused to submit either or any of the questions to the jury, and the defendants thereupon duly excepted to each and every one of said refusals. The court then directed the jury to find a verdict in favor of the plaintiff for the sum named, to which direction the defendants also excepted.

A person to whom a warehouse receipt has been transferred by indorsement and delivery, as collateral security, is vested with a qualified title which gives him the right to take possession of the property upon the surrender and cancellation of the receipt. The right that he acquires is not an absolute title, for the owner may redeem and the right of possession is subject to the liens of the warehouseman for storage. The statute provides that such warehouse receipts " may be transferred by indorsement thereof ; and any person to whom the same may be so transferred, shall be deemed and taken to be the owner of the goods, wares and merchandise therein specified, *so far as to give validity* to any pledge, lien or transfer made or created by such person or persons ; but no property shall be delivered except on surrender and cancellation of said original receipt, or the indorsement of such delivery thereon in case of partial delivery." (Laws 1858, ch. 326, § 6.) A person, therefore, who becomes a holder of a warehouse receipt, as collateral security, does not by reason of his having the possession of the receipt necessarily become bound for the storage of the property. It is true he has a qualified title and he may, if he so elects, take or reduce the property to possession upon payment of the storage. He, however, is not bound to take possession of the property or to pay the charges thereon. The defendants, after paying the note which they had guaranteed and upon receiving the warehouse receipts from the Chemical National Bank, had the right to ascertain and determine whether there was property on storage represented by the receipts out of which they could reimburse themselves for the money that they had been compelled to pay. They had the right to inquire of the warehouseman as to the amount of claims held against the property for storage and to examine it

for the purpose of determining whether it was of value sufficient to meet the charges before taking possession. If, after ascertaining these facts, they took possession, either actual or constructive, or did any act indicating a purpose to take the control and management of the property, they thereafter became liable for the subsequent storage of the property. It, therefore, became a question upon the trial of this action, as to whether the defendants had, in fact, taken possession of the property, actual or constructive, or as to whether they had done any act indicating that they intended to take the control and management thereof.

The court below appears to have been of the opinion that the defendants took possession of the property on the 24th of October, at the time that the defendant Wills, in answer to the question of the plaintiff's bookkeeper as to whether he should make out a bill for the accrued storage, answered, " Yes, you had better." It does not appear to us that this testimony shows that possession was then taken by the defendants. They had the right, as we have seen, to be informed as to the amount of charges against the property, and also the right to examine it before determining whether they would take possession. They also sent other parties to examine the goods for the purpose of learning whether they would purchase. We think the defendants had the right to ascertain through others as to whether the property was of the character described in the warehouse receipts and as to whether it was merchantable, and that such an examination should not be construed as the taking possession of the property, or as exercising acts of control and management thereof. It appears to us, therefore, that the court erred in directing a verdict for the plaintiff and in refusing to permit the defendants to go to the jury upon the questions incorporated in their request.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Gray, O'Brien, Landon, Cullen and Werner, JJ., concur; Parker, Ch. J., not voting.

Judgment reversed, etc.