Romain Blakeslee, Trading as Blakeslee's Storage Warehouse, Defendant in Error, v. Charles Turgrimson, Plaintiff in Error.

### Gen. No. 16,633.

1. WAREHOUSEMEN—*liability of chattel mortgagee for storage.* The fact that a chattel mortgagee has a lien on goods stored by the mortgagor does not make him liable for the storage; but if his acts and conduct indicate a purpose to take the control and management of the goods, he thereafter becomes liable for subsequent storage charges.

2. WAREHOUSEMEN—*when chattel mortgagee is liable for storage.* Where a chattel mortgagee properly files a bill to foreclose on goods stored by the mortgagor, obtains an order that the sheriff shall take possession, goes with the sheriff to the warehouse, says that he will leave the goods in the warehouse and accepts a warehouse receipt issued to and indorsed by the sheriff, he indicates a purpose to take the control, management and possession of the goods and is liable for subsequent storage charges.

3. WAREHOUSEMEN—*rate of storage on receipt controls.* Where a chattel mortgagee procures a sheriff to take possession of goods stored by the mortgagor and takes control and possession of the goods and accepts a warehouse receipt given the sheriff that states a certain monthly storage charge, he is liable for the subsequent storage at such rate.

Error to the Municipal Court of Chicago; the HON. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed December 30, 1912.

In an action of the fourth class in the municipal court brought February 23, 1910, by defendant in error Blakeslee against plaintiff in error Turgrim-

son to recover charges for warehousing certain goods, Blakeslee had judgment for two hundred and four dollars, and Turgrimson prosecutes this writ of error. June 19, 1905, Blakeslee received the goods into his warehouse and issued his warehouse receipt therefor to Mrs. J. J. Connors. Turgrimson filed his bill in the superior court against Mrs. Connors and Blakeslee to foreclose a chattel mortgage on said goods. November 11, 1905, on an affidavit filed in said cause an order was entered directing the sheriff to seize and take into his possession and turn over to complainant Turgrimson the goods then in the warehouse of the defendant Blakeslee, and in said order described, directing Blakeslee to deliver the said property stored in his warehouse in the name of J. J. Connors to the sheriff and directing Turgrimson to safely keep said goods so to be delivered to him by the sheriff subject to the order of the court. Pursuant to the order the sheriff, November 14, seized said goods, which were then in the warehouse of Blakeslee, received from him a warehouse receipt therefor running to himself, endorsed on said receipt an order to Blakeslee to deliver said goods to Turgrimson, and delivered the receipt so endorsed to Turgrimson. The return of the sheriff states that he seized said goods and turned the same over to Turgrimson and Turgrimson gave to the sheriff a receipt for said goods.

CLARK & CLARK, for plaintiff in error.

BRADY, BARNUM & RUTLEDGE, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

The fact that Turgrimson had a lien on the goods in question did not make him liable for their storage. But if his acts and conduct indicated a purpose to take the control and management of the goods, he thereafter became liable for the subsequent storage of the goods. Driggs v. Dean, 167 N. Y. 121.

Turgrimson's bill to foreclose his mortgage on said goods was necessarily based on the theory that there had been such a breach of the conditions of the mortgage as gave him the right to take possession of the mortgaged property. The statute of June 5, 1889, provides that no chattel mortgage on necessary household goods shall be foreclosed except in a court of record, and that no such household goods, etc., shall be taken out of the possession of the mortgagor before foreclosure except by the sheriff, and then only in case the mortgagor or his agent shall present to the judge an affidavit and obtain from him an order directing the sheriff to seize such goods, and hold them subject to the order of the court. Laws of 1889, p. 208.

Turgrimson, by filing the bill to foreclose, presenting an affidavit to the judge and obtaining an order that the sheriff take possession of the goods and turn them over to him, going with the sheriff to Blakeslee's warehouse with the order when it was executed and a warehouse receipt issued to the sheriff, saying that he would leave the goods in the warehouse, accepting from the sheriff said warehouse receipt with an order of the sheriff endorsed theron directing Blakeslee to turn over the goods mentioned therein to him and giving to the sheriff a receipt for said goods, plainly indicating a purpose to take the control, management and possession of said goods, and the court properly held him liable for the subsequent storage of the goods.

The rate of storage stated on the warehouse receipt delivered to Turgrimson was four dollars per month.

"If a tavern keeper, warehouseman or wharfinger specifies his rates of charge, and gives notice to a customer in advance, and the latter afterwards puts up at his tavern, or makes use of his warehouse or wharf, he thereby assents to the proposed charges, and cannot refuse to pay them, upon the ground that they are more than is reasonable or customary. By the use of the wharf, after notice of plaintiff's rates of charges,

the defendants impliedly contracted to pay them, and they cannot now disaffirm their contract.'' Steamship Co. v. Sparks, 22 Tex. 659.

The suit was brought fifty-one months after November 14, 1905, and the court properly found that plaintiff was entitled to recover two hundred and four dollars, and the judgment is affirmed.

*Affirmed.*