HENRY W. PACKER *vs.* INTERNATIONAL TRUST COMPANY.

Suffolk.    March 8, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & PIERCE, JJ.

*Warehouse,* Bonded.  *Contract,* Implied.  *Intoxicating Liquors.  Assignment. Bailment.*

An assignee of subsequent and successive grantees of the purchaser at a sale in 1905, in foreclosure of a mortgage, of real estate upon which is a bonded warehouse in which in 1903 thirty-two hundred barrels of rum had been stored by a distiller, who then owned the real estate, under the provisions of U. S. Rev. Sts. §§ 3271 *et seq.*, cannot maintain any action for storage against one who in 1911 received as a pledgee negotiable certificates for four hundred and fifty barrels of the rum, twenty-six of which, calling for delivery of two hundred and fifty barrels, had been issued by the distiller in 1903,

and one, calling for delivery of two hundred barrels, had been issued in 1911, although in 1912 the pledgee for breach of the pledge took possession of four hundred and twenty-nine of the barrels and removed them from the warehouse, none of the plaintiff's assignors in the circumstances having any right as warehouseman as to the bonded goods and there being no contract, express or implied, rendering the pledgee liable for any storage charges.

CONTRACT, with a declaration as amended in five counts for storage of four hundred and twenty-nine barrels of rum in a bonded warehouse owned, when the rum was placed there, by Old Colony Distilling Company, and, upon the foreclosure a mortgage, subsequently owned in succession by various persons who had assigned their claims for storage to the plaintiff. Writ dated March 23, 1914.

The action was referred to an auditor and, upon the filing of his report, was heard by *Hitchcock*, J., without a jury. Material facts are described in the opinion. At the close of the evidence, the judge, subject to exceptions by the plaintiff, declined to make the following rulings:

" 1. The plaintiff is entitled to recover.

" 2. The defendant is liable to the plaintiff for the storage of the rum in question.

" 3. In the absence of a special contract, where goods are received by a warehouseman for storage in the usual course of business, there is an implied contract to pay the customary charges for storage and expenses, although the warehouseman does not know the identity of the owner until delivery is demanded."

" 7. If a person purchases a warehouse receipt with notice that the goods are subject to storage charges, he is liable not only for the storage charges accruing subsequent to the purchase, but also for those which have accrued prior thereto.

" 8. The transferee of a warehouse receipt which shows the rate of storage, who claims to be the owner of the property, is liable for the storage which has accrued and which subsequently accrues.

" 9. Delivery of the warehouse certificate in question to defendant operates as delivery of possession of the rum represented thereby."

The following findings and rulings, asked for by the defendant, were given by the judge subject to exceptions by the plaintiff:

"1. That defendant was not owner of any of the rum stored in the warehouse of the Old Colony Distilling Company during the period August 26, 1905, to March 25, 1912. On March 25 and 26, 1912, defendant was the holder as pledgee of warehouse certificates of the Old Colony Distilling Company for four hundred and fifty barrels of rum in storage and on those dates certificates were surrendered by it and it received possession of said rum which was then removed from the warehouse and carried away.

"2. There was no express contract made by the defendant with the plaintiff or with any of his assignors in title for the payment of any storage.

"3. There was no privity of contract with reference to payment of storage between defendant and the plaintiff or any of his assignors.

"4. The taking by the defendant of the warehouse certificates did not oblige it to pay the storage charges until it took possession and then only the charges subsequent thereto, but there were no such charges.

"5. Any lien which might have existed for the warehouse charges was lost by the delivery of the property to the defendant.

"6. Defendant did not take possession of the property until it removed it.

"7. On all the evidence I rule that the action cannot be maintained.

"8. As matter of law I rule that the action cannot be maintained."

The judge found for the defendant; and the plaintiff alleged exceptions.

*H. W. Packer, pro se.*

*W. P. Everts,* for the defendant.

DeCourcy, J.   The Old Colony Distilling Company in 1903 owned a lot of land in Cambridge, on which were buildings used as a distillery and warehouses in connection with its business of distilling spiritous liquors. In the fall

of that year it distilled about thirty-two hundred barrels of rum, and stored the same in one of said buildings, which was used as a bonded warehouse under the provisions of the internal revenue laws. U. S. Comp. Sts. (1916) §§ 6009, *et seq.* (U. S. Rev. Sts. §§ 3271, *et seq.*)

With reference to those statutory provisions it was pointed out in *Taney* v. *Penn National Bank of Reading*, 232 U. S. 174, 181, that " To insure collection of the heavy tax that is laid upon distilled spirits, the production is carefully supervised and the product is impounded." Every distiller must provide at his own expense " a warehouse, to be situated on and to constitute a part of his distillery premises, and to be used only for the storage of distilled spirits of his own manufacture until the tax thereon shall have been paid." This warehouse, when approved by the Commissioner of Internal Revenue, " is hereby declared to be a bonded warehouse of the United States, to be known as a distillery warehouse, and shall be under the direction and control of the collector of the district, and in charge of an internal revenue store-keeper, assigned thereto by the Commissioner." U. S. Rev. Sts. § 3271. As was said in the Taney case (page 182), " While the statute provides that ' every distillery warehouse shall be in the joint custody of the store-keeper and the proprietor thereof,' the control of the Government's representative is made dominant, as in the nature of the case it must be in order to fulfill the purposes of the act. The warehouse, the statute continues, ' shall be kept securely locked, and shall at no time be unlocked, or opened, or remain open, unless in the presence of such store-keeper, or other person who may be designated to act for him, as provided by law; and no articles shall be received in or delivered from such warehouse except on an order or permit addressed to the store-keeper and signed by the collector having control of the warehouse ' (§ 3274). Under the departmental regulations ' the lock to the warehouse door must be the Government lock, the key of which must at all times be in charge of the store-keeper.' . . . The building is his [the distiller's], but the Government is in complete control. The spirits are his, but he is subject to

fine and imprisonment if he attempts to remove them. It is undoubtedly true that the Government is not strictly a bailee. It assumes no responsibility to the distiller for the safe-keeping of the goods (*United States* v. *Witten,* 143 U. S. 76, 78). But the immunity which is incident to the exercise of governmental power in no way limits its effect upon the distiller's relation to the goods. They are effectually taken out of his power so that he is absolutely unable to make a physical delivery of them until the tax is paid."

The Old Colony Distilling Company issued warehouse certificates for the larger part, if not the whole, of the thirty-two hundred barrels. The certificates were negotiable in form; and when that company sold any of the rum it would deliver certificates for the same with its indorsement in blank thereon; and the holder could remove the rum upon paying the revenue tax and other charges. John E. Cassidy and Company on March 13, 1911, borrowed $3,750 from the defendant on their promissory note secured by a pledge of warehouse certificates calling for the delivery of two hundred and fifty barrels of Old Colony Distilling Company rum then on storage in the warehouse in question: and on March 31, 1911, the defendant loaned to the same firm the further sum of $3,000 secured by pledge of warehouse certificates calling for the delivery of two hundred barrels of rum. Twenty-six of the certificates, calling for delivery of two hundred and fifty barrels, bear date of September 30, 1903; and twenty, calling for delivery of two hundred barrels, were dated March 1, 1911. The loans were not paid: the defendant held the certificates as security for its loans without taking possession of any of the rum, until March 25 and 26, 1912, when it surrendered the certificates and removed four hundred and twenty-nine barrels, after paying the United States internal revenue tax thereon. The receipts therefor, given by the teamster employed by the defendant, recited that the barrels were received from the Old Colony Distilling Company.

Meanwhile a mortgage, given by said company upon its real estate including the warehouse in question, was foreclosed in 1905. There were several hundred barrels of the

rum remaining in said warehouse, among which were the four hundred and twenty-nine barrels involved in this transaction. Ella E. Morse, the purchaser at the foreclosure sale, conveyed the premises to one William S. Radway in August, 1905; and after several mesne conveyances the title became vested in the Purity Distilling Company, which was the owner when this action was heard by the auditor. The plaintiff Packer is the assignee of any claims which each of the owners since Ella E. Morse had for the storage of said four hundred and twenty-nine barrels of rum in the warehouse: but he does not hold any assignment from the Old Colony Distilling Company. This action was brought to recover for that storage. The judge of the Superior Court, sitting without a jury, found for the defendant.

The plaintiff's claim for storage is based upon the contention that the relationship between his assignors and the defendant was the usual one existing between a warehouseman and its customers, or that of bailor and bailee; and that the transferee of a warehouse receipt is liable for storage to the successors in title of the warehouseman. This view loses sight of the peculiar situation created by the internal revenue laws. As already shown, the dominant control of this warehouse was not in the owner but in the representative of the United States government. To insure the continuance of that control the statute requires that the distiller must be owner of the premises in fee simple, unincumbered; or that he file with the collector the written consent of the owner of the fee and of any mortgagee, judgment creditor or other person having a lien thereon, " that the premises may be used for the purpose of distilling spirits, subject to the provisions of law," and expressly stipulating that the lien of the United States shall have priority, and that in case of the forfeiture of the distillery premises the title should vest in the United States discharged from such incumbrances. U. S. Comp. Sts. (1916) § 5999. U. S. Rev. Sts. § 3262. *Mansfield* v. *Excelsior Refining Co.* 135 U. S. 326. Even when the use of the distilling premises by a successor in the business is permitted by the Commissioner

of Internal Revenue, it must be " after setting apart and separating, by a secure and unbroken partition such portion of it as may be necessary for the storage and safe-keeping of the spirits distilled by the original person, firm or company, during the period allowed by law for the removal of distilled spirits from distillery warehouses, or until said spirits are removed, and the tax paid thereon within that time." U. S. Comp. Sts. (1916) § 6010. U. S. St. 1874, c. 7. Under the statute the Old Colony Distilling Company alone had authority to act as warehouseman of the rum in question, and to issue certificates therefor. And it appears from the evidence that it exercised that authority. The certificates for two hundred barrels held by the defendant were issued by the Old Colony Distilling Company on March 1, 1911, six years after it had lost title to the premises by the mortgage foreclosure. When lots of rum were withdrawn by it subsequent to the foreclosure, this same company paid the storage to the owners. None of this rum could be withdrawn from the premises without the consent of that company. And, as the auditor finds, " So far as appeared by the evidence, the Old Colony Distilling Company continued to occupy the premises as a bonded warehouseman until after the rum had been removed by the defendant." Whatever rights the plaintiff may have against said company for the use and occupation of that portion of the premises in which the rum was stored, it is clear that he could have no claim as warehouseman for storage against the defendant. And any lien which might have existed for storage was lost by the delivery of the property to the defendant.

The finding of the trial judge that there was no contract, express or implied, rendering this defendant liable for storage charges prior to the time when it took possession of the rum, was warranted by the evidence. *Vinal* v. *Nahant*, 232 Mass. 412, 419. G. L. c. 105, § 37. Whatever obligation to pay taxes and storage was created by the terms of the warehouse receipts was one owed by the defendant to the Old Colony Distilling Company; and presumably the defendant would not be liable even to that company while holding the receipts merely as collateral security, subject to

their redemption by the owners, John E. Cassidy and Company. *Driggs* v. *Dean*, 167 N. Y. 121. None of the plaintiff's assignors had authority to act as warehouseman of the rum in question, or to use or control that part of the premises where it was stored.

Accordingly we are of opinion that there was no error in the judge's adoption of the rulings requested by the defendant, or in his refusal to give those of the plaintiff which were applicable to the peculiar facts of this case. Apparently the trial judge filed a "Memorandum" of his findings, but it was not embodied in the bill of exceptions. See *Cressey* v. *Cressey*, 213 Mass. 191; *Norton* v. *Musterole Co. Inc.* 235 Mass. 587. The plaintiff excepted to certain statements contained therein. In view of what has been said above, we cannot say as matter of law that the findings excepted to were not substantially correct.

*Exceptions overruled.*