[No. 18346.   Department Two.   June 5, 1924.]

F. STANLEY MILLICHAMP, *Appellant*, v. FIRST NATIONAL BANK OF TOPPENISH, *Respondent*.[1]

WAREHOUSEMEN (2-1)—RECEIPTS—TRANSFER AS COLLATERAL SECURITY—STORAGE CHARGES—LIABILITY OF PLEDGEE.  Where chattel mortgagors of a crop stored it in a warehouse and assigned the negotiable warehouse receipt to the mortgagee as additional or collateral security, the mortgagee takes only a qualified title to the warehouse receipt and the property it represents, as a pledgee; and is therefore not liable for the storage charges where he did not do anything to take or assume possession or control over the stored property (PEMBERTON, J., dissenting).

Appeal from a judgment of the superior court for Yakima county, Gilbert, J., entered March 29, 1923, upon findings in favor of the defendant, in an action for storage charges, tried to the court.  Affirmed.

*Joseph C. Cheney*, for appellant.

*Grady, Shumate & Velikanje*, for respondent.

BRIDGES, J.—The only question involved here is whether the respondent is liable for certain warehouse storage charges.

L. D. McCain and E. H. Burlingame were the owners of certain potatoes. They were stored in the ware-

[1]Reported in 226 Pac. 490.

house of the appellant, who issued the usual negotiable warehouse receipt in the name of Burlingame. At the time of making the storage, McCain was indebted to the respondent, which indebtedness was secured by a chattel mortgage on the crops to be grown on the lands from which the potatoes in question were taken. After the potatoes were stored, the bank asked McCain to deliver the warehouse receipt to it as additional and collateral security for his indebtedness. McCain complied with this request by having Burlingame, in whose name the warehouse receipt stood, endorse it to the bank. There is no doubt but that the bank took the receipt only as security. Later the potatoes were sold for an amount wholly insufficient to pay the storage charges and the warehouseman instituted this suit, seeking to collect such charges from the respondent bank. Judgment went for the bank and the warehouseman has appealed.

Appellant asserts that the law is that the transfer of a warehouse receipt as collateral security for an indebtedness passes the legal title to the warehouse receipt and the property it represents and constitutes an actual delivery and change of possession of the property, and that the pledgee of such a receipt has both title and possession and he alone may sue for injury to, or conversion of, the property. A number of cases are cited in support of these legal propositions. On the other hand, the respondent contends that it became only a qualified owner and would be liable for storage only in the event it took some active steps to reduce the stored property to its possession or assumed control over it.

A careful consideration of the cases cited by the appellant convinces us that they do not support his view. They are cases where either the warehouse re-

ceipt was sold in the usual way, with the intention of passing title, or was given as security and the person holding it had reduced the property to his possession or taken control of it. It would be interesting to review the cases cited by the appellant, but we do not deem it essential so to do. By the transaction involved here it was never intended by any person that the respondent should become the unqualified owner of either the warehouse receipt or of the potatoes. Nor did it do anything which showed that it took or assumed possession of, or control over, the stored property. Indeed, practically all of the testimony shows that the receipt was endorsed to the respondent so that it might control, to the extent of its indebtedness, the disposition of the money which should ultimately be derived from the disposition of the potatoes. It is true the appellant testified that he had a letter from the respondent which asked him to hold the potatoes for the respondent. He was unable to produce any such letter, and the respondent's cashier—who transacted all of this business—testified that the bank did not write any such letter and that it always kept copies, and a search had failed to show any such copy, and that, after obtaining the receipt, he notified the appellant by telephone that the bank held it for security purposes. All the other testimony shows that the bank took no active steps whatsoever to reduce the potatoes to its possession, or that it gave any instructions or directions to appellant concerning them. Indeed, the testimony shows that the respondent made no effort to dispose of the potatoes, but looked entirely to the assignors of the receipt so to do.

The correct rule, in our opinion, is laid down in *Driggs v. Dean,* 167 N. Y. 121, 60 N. E. 336, where the facts were almost identical with those here. The court said:

"A person to whom a warehouse receipt has been transferred by endorsement and delivery as collateral security is vested with a qualified title which gives him a right to take possession of the property upon the surrender and cancellation of the receipt. The right that he acquires is not an absolute title, for the owner may redeem, and the right of possession is subject to the liens of the warehouseman for storage. . . . A person therefore, who becomes a holder of a warehouse receipt as collateral security, does not, by reason of his having possession of the receipt, necessarily become bound for the storage of the property. It is true he has a qualified title, and he may, if he so elects, take or reduce the property to possession upon payment of the storage. He, however, is not bound to take possession of the property, or to pay the charges thereon."

The court further held in that case that if the transferee of the receipt actually took possession of the property and gave directions concerning it he would be liable for the storage charges from the time of taking possession.

The same rule is laid down in *Blakeslee's Storage Warehouse v. Turgrimson,* 176 Ill. App. 83, where the court very tersely said:

"The fact that Turgrimson had a lien on the goods in question did not make him liable for their storage. But if his acts and conduct indicated a purpose to take the control and management of the goods, he thereafter became liable for the subsequent storage of the goods."

See, also, 40 Cyc. 452. There is nothing in our warehouse receipt statutes (Rem. Comp. Stat., § 3587 *et seq.*) [P. C. § 7141], which would lead us to a contrary conclusion. The judgment is affirmed.

MAIN, C. J., FULLERTON, and MITCHELL, JJ., concur.

PEMBERTON, J., dissents.