**MOUNT TIVY WINERY, Inc., v. LEWIS et al., and six other cases.**
**No. 10220.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 19, 1943.

---

Robert H. Fouke, of San Francisco, Cal., for appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and W. F. Mathewson, Asst. U. S. Atty., both of San Francisco, Cal., for appellees.

Before DENMAN, HANEY, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court that appellant, Mount Tivy Winery, Inc., recover nothing on its suit against John V. Lewis, Collector of Internal Revenue, to recover $15,419.33 as a refund on floor taxes assessed and paid under § 10(c) of the Liquor Taxing Act of 1934, 48 Stat. 315.[1] This section provides for a tax "(c) Upon all wines held by the producer thereof upon the day this title takes effect and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor tax equal to the amount, if any, by which the tax provided for under section 8 of this title exceeds the tax paid upon the grape brandy or wine spirits used in the fortification of such wine."

Appellant taxpayer contends that the district court erred in holding (A) that the wines taxed were "held" by it and were "intended for sale," within the meaning of § 10(c); (B) that the tax on a holding of wines intended for sale is an excise tax and not an unapportioned direct tax in violation of Article I, Section 2, Clause 3, and Article I, Section 9, Clause 4 of the Constitution; and (C) that placing the tax on such wine holders does not constitute an improper classification for tax purposes and hence not a violation of the due process clause of the Fifth Amendment.

(A) *Appellant producer of wines held them intended for sale.*

1. The agreed facts show that appellant is a California corporation engaged in the manufacture, production and sale of wine. In 1933 appellant and the Fidelity Warehouse Corporation (hereafter called the Warehouse) executed a "Field Warehouse Storage Agreement" which provided that the Warehouse was to maintain a public warehouse in and upon the premises leased by appellant to the Warehouse; that appellant was to employ the Warehouse to furnish all field warehouse services necessary to the appellant's business; that the Warehouse should place a bonded agent in charge of the warehouse, and should issue warehouse receipts upon property which appellant might store therein. In pursuance of this agreement appellant leased a portion of its building to the Warehouse for such purpose, and the Warehouse secured a permit from the state and federal governments to operate it as a public warehouse.

During the months of November and December 1933, appellant placed 484,000 gallons of fortified wine (brandy added) in the warehouse and requested the Warehouse to issue four negotiable original wine warehouse receipts to the Bank of America National Trust and Savings Association. (hereafter called the Bank) for the total gallonage in the warehouse.

Prior to the issuance of these warehouse receipts to the Bank, and prior to January 12, 1934, the Bank had from time to time extended unsecured bank credits to appellant. As the wine was produced and delivered by appellant to the warehouse the Warehouse issued the warehouse receipts covering the wine. At the request of the Bank appellant executed several promissory notes to evidence the debt and also executed a collateral agreement, after the issuance of the warehouse receipts, which stated, in part: "In consideration of all financial accommodations given, or to be given, or continued, to the undersigned Mount Tivy Winery, Inc., a California corporation, by Bank of America National Trust and Savings Association, (hereinafter called the Bank), *and as collateral security for the payment of any indebtedness, obligation or liability of the undersigned to the said Bank now or hereafter existing,* * * * the undersigned does hereby assign, transfer to, and deposit with the said Bank, all property this day delivered by the undersigned to the Bank, or which may now be held by the Bank, or which may hereafter be delivered by the undersigned to the Bank during the existence of this agreement, *and of which prop-*

---

[1] Six other cases have been consolidated for this appeal by stipulation of the parties and on order of the district court, and are to be governed by the decision in this case.

*erty the undersigned is the owner,* the same being stored, deposited and cared for at the risk and expense of the undersigned. The power of sale hereinafter given shall apply to all collaterals of any kind, including all moneys, negotiable instruments, bonds, stock, commercial paper, credits, choses in action, * * *." (Emphasis supplied.)

The agreement states further: (1) That the Bank shall have power to collect all sums due upon the securities and to apply said sums to the indebtedness. (2) The Bank shall have the right to transfer to its own name any warehouse receipt, etc., which appellant deposits with it as security.

The 484,000 gallons of wine in the warehouse on January 12, 1934, were later sold in the following manner: Appellant secured prospective customers and notified the Bank of the proposed terms of the sale. In the event the Bank approved, it would execute and deliver to the Warehouse an order for warehouse release.

Appellant first argues that under § 10 (c) of the Liquor Taxing Act, supra, the word "held" means held by the owner, and that on January 12, 1934, the Bank was the owner of the wine by virtue of a sale.

▆▆▆▆ Whether a sale of the wine stored in the warehouse resulted from the transactions between appellant and the Bank depends upon the intentions of the parties. A bill of sale may be a pledge or a mortgage if the parties so intend, just as a deed to real property may be held to be a mortgage. Thus the issuance of the warehouse receipts to the Bank is not conclusive of whether a sale was intended.

▆▆▆ The evidence here clearly shows that a sale to the Bank was not intended by the parties. It was a credit arrangement so that appellant could obtain needed credit and the creditor Bank could obtain some security for giving the credit. The collateral agreement made after the issuance of the warehouse receipts to the Bank establishes beyond doubt that the purpose was to obtain credit and obtain security, and was not intended as a sale of the wine to the Bank. The fact that the collateral agreement came after the issuance of the warehouse receipts is immaterial. The debt already existed prior to the issuance of the receipts and by its terms the agreement was made applicable to existing and future loans. The sales made subsequent

to January 12, 1934, also show that the prior transactions did not constitute a sale to the Bank. These sales were made by appellant who found the customers. The Bank merely approved the terms. There is no indication that appellant was acting as the agent of the Bank in selling the wine.

(A) 2. Appellant next urges that even if the transactions amounted only to a security transaction and not a sale, the interest of the appellant in the wine on January 12, 1934, was not taxable under the statute because appellant on that date neither held legal title to the wine nor possession nor the right to possession. It contends that all it held was an inchoate right to receive the wine back at some future date, provided it paid its obligations to the Bank. Appellant concludes that this type of interest was not intended to be taxed under the section.

▆▆ It is unnecessary to decide whether such an interest would be taxable, for here appellant held more of an interest than described above. It had legal title to the wine. The legal consequences of transactions concerning the warehouse receipts are determined by California law. The California Warehouse Receipts Act, § 42, (Deering's General Laws of California, Vol. 2, Act 9059), provides as follows: "A person to whom a receipt has been transferred but not negotiated, acquires thereby, as against the transferor, the title to the goods, *subject to the terms of any agreement with the transferor."* (Emphasis supplied.) Section 58 of the Act provides, " 'Owner' does not include mortgagee or pledgee."

▆▆▆ Under the phrase of the above section, "subject to the terms of any agreement with the transferor," title to goods would not pass by the transfer of a warehouse receipt if the parties expressly agreed that it would not. Here the parties in the collateral agreement, and even prior thereto, made an agreement for security. This security agreement amounted to a pledge of the wine with the Bank for security of the debt owed the Bank by appellant. In this pledge agreement, instead of the Bank taking possession of the wine, it took constructive possession of it through the warehouse receipts. Under California law a warehouse receipt can be used to create a valid pledge as long as the pledgor does not have control over the property

pledged. Cf. McCaffey Canning Co. v. Bank of America, 109 Cal.App. 415, 421, 422, 426, 294 P. 45.

In a pledge agreement title does not pass to the pledgee. All he receives is possession of the goods and the right to retain possession until the debt is paid. Thus, here the appellant and the Bank entered into a pledge agreement. Having so agreed, they could not have intended title to pass. Inasmuch as the terms of the agreement created a pledgor-pledgee relationship which does not result in a transfer of legal title, the parties necessarily agreed that title should not pass on the transfer of the warehouse receipts.

The fact that the warehouse receipts here were negotiable and thus gave the receipt holder the power to transfer good title to a bona fide purchaser, does not mean that title passes to such holder. A negotiable note can be given for safe keeping without any intent to pass title to it.

Nor does it make any difference that here the warehouse receipts were originally issued to the Bank by the Warehouse, instead of being issued to appellant and transferred by it to the Bank. The Warehouse in issuing the receipts was acting on the orders of appellants and its agent. A watch in the possession of an agent can certainly be pledged directly by the agent without the necessity of the owner taking back possession and personally giving it to the pledgee.

The situation is one in which an ordinary pledgor-pledgee relationship is established with legal title remaining in appellant, pledgor, and possession being in the pledgee Bank. The question is whether under such conditions the appellant "held" the wine as meant in § 10(c) of the Taxing Act. Both parties agree that the word "held" implies ownership in some form. Certainly the holder of the legal title is an owner. Lack of possession does not detract from this ownership. To decide otherwise would result in interpreting "held" to include both title and possession. Cf. Helvering v. New York Trust Co., 292 U.S. 455, 465, 469, 54 S.Ct. 806, 78 L.Ed. 1361. The district court committed no error in deciding that the appellant held the wine produced by it with intent to sell it when the tax was imposed.

(B) *The tax is an excise tax.*

In Bromley v. McCaughn, 280 U. S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226, the court, in holding the gift tax to be an excise and not a direct tax on property, stated the test for determining an excise tax as follows: "a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership." Appellees contend that the tax in question is laid upon the power of an owner, who is a wine producer, to hold such wine for sale. Appellant concedes that the *exercise* of the right or privilege can be taxed as an excise tax, but states that the tax here is not on the exercise of anything, but is a tax on an intention to exercise a right, namely, the right to sell the goods.

In Steward Mach. Co. v. Davis, 301 U.S. 548, 580, 581, 57 S.Ct. 883, 887, 81 L.Ed. 1279, 109 A.L.R. 1293, the court, in holding the tax imposed by the Social Security Act on employers of eight or more to be a valid excise tax said: "We learn that employment for lawful gain is a 'natural' or 'inherent' or 'inalienable' right, and not a 'privilege' at all. But natural rights, so called, are as much subject to taxation as rights of less importance. An excise is not limited to vocations or activities that may be prohibited altogether. * * * It extends to vocations or activities pursued as of common right. What the individual does in the operation of a business is amenable to taxation just as much as what he owns * * *."

Here the right of a producer to engage in the activity of holding wine intended for sale is a common right, but would nevertheless appear to be taxable as an excise tax under the language quoted above.

The statute in question was held to be an excise tax in Commonwealth of Pennsylvania ex rel. Schnader v. Fix, 9 F.Supp. 272, 274. The section was held to be an excise mainly on the authority of Patton v. Brady, 184 U.S. 608, 616, 618, 22 S.Ct. 493, 496, 46 L.Ed. 713. The taxing act, there held valid as an excise, provided:

"Sec. 3. That there shall, in lieu of the tax now imposed by law, be levied and collected a tax of twelve cents per pound upon all tobacco and snuff, however prepared, manufactured, and sold, or removed for consumption or sale. * * *

"And there shall also be assessed and collected, * * * upon all the articles enumerated in this section which were manufactured, imported, and removed from factory or customhouse before the passage of

this act * * * and which articles were at the time of passage of this act *held and intended for sale by any person,* a tax equal to * * *." (Emphasis supplied.)

Appellant contends that this tax, because levied upon tobacco after it had been removed from the warehouse, is a tax upon the sale of the tobacco and not upon the holding of tobacco intended for sale. The plain words of the statute show that the tax was imposed, whether or not the removed tobacco was sold. The Supreme Court holds that the tax "is not a tax upon property as such, but upon certain kinds of property, having reference to their origin and their *intended use.* * * * We conclude, therefore, that the tax which is levied by this act is an excise, properly so called, and we proceed to consider the further propositions presented by counsel." Patton **v.** Brady, supra, 184 U.S. at page 619, 22 S. Ct. 493, 497, 46 L.Ed. 713.

The district court committed no error in holding the tax an excise tax.

(C) *An excise tax may be imposed on wine producers, though it is not also imposed on tobacco or other producers.*

Appellant's counsel should not burden a federal or any court with a contention to the contrary of this long established power of legislatures so to classify the occupations of persons upon whom excise taxes may be imposed. The Fifth Amendment contains no equal protection clause. Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. Cf. Patton v. Brady, supra.

The judgments in favor of the Collector of Internal Revenue against Mount Tivy Winery, Inc. and all the other six appellants are affirmed.

Affirmed.