William Lyman, J.
This action was tried before me without a jury. Findings of facts and conclusions of law were waived.
This is an action to recover on two demand loans in the total amount of $32,000 plus interest and incidental charges. Plaintiff alleges an oral agreement, supplemented by two collateral notes and collateral security of warehouse receipts. Defendant sets up a qualified denial of the complaint, but admits the making of the notes and refers to these instruments for the terms and conditions. In short, the defendant denies any oral agreement; claims the notes are the complete agreements and that oral evidence should not be admitted to vary the terms of the written instruments. As an affirmative and complete defense, and by way of counterclaim, defendant contends that the loans were usurious and void and he seeks the return of the warehouse receipts. He also seeks return of usurious interest based on 10 alleged usurious notes on which interest had been paid, in the sum of $3,577.21.
Plaintiff in reply to the answer and counterclaim denies that the notes are usurious; states that the loans were repayable on demand, were over $5,000, interest rate agreed upon in writing and were made upon negotiable warehouse receipts pledged as collateral security. In short, plaintiff contends that the transactions come within section 379 of the General Business Law, under which additional compensation is permitted.
The main contention of the defendant is that these loans were not made upon the negotiable warehouse receipts but were made upon the security of the merchandise itself; that such merchandise was listed as the collateral in the body of the notes. Defendant also contends that the warehouse receipts (held by plaintiff) served merely as collateral evidence of the property held by the plaintiff and as collateral evidence of plaintiff’s possession of such property. Defendant further contends that it is the law of this case that a question of fact is to be tried because a motion for summary judgment had been so decided, viz., whether the advances were made as a loan evidenced by *880 notes attached to the complaint and upon the security of personal property mentioned in the notes with the warehouse receipts as collateral evidence of the property held as security and the plaintiff’s possession thereof, or, were made upon the security of warehouse receipts with the notes as further evidence thereof so as to bring the transaction within the provisions of section 379 of the General Business Law.
As to this last contention of the defendant, suffice it to say that upon denial of a motion for summary judgment, the case must take its usual course and the trier of the law and the facts shall determine what issues have been presented after all the evidence has been submitted.
The evidence in this case shows that the parties have had previous dealings on matters of loans based upon security. In fact in one of the original requests by the defendant to the plaintiff on February 24, 1955 for advances, such advance was to be on collateral security of warehouse receipts. Eventually collateral.notes dated February 24, March 15, March 28, 1955 covering 239 bales of camel hair wool, and June 24, 1955 covering 99 bales of wool were pledged as security. Thereafter other so-called renewal notes were given with security listed on the body as bales of wool. (Merchandise covered in the warehouse receipts heretofore mentioned.) These transactions constitute the counterclaim of the defendant. Of the collateral notes (Exhibits 3 and 4) in issue in the prime case, exhibit 3 refers to the collateral security as 99 bales of camel hair wool, while exhibit 4 refers to the collateral security as 239 bales of camel hair wool in various warehouses covered by negotiable warehouse receipts pledged to Intercontinental Credit Corporation.
Defendant in his answer and as part of the second affirmative defense and counterclaim stated that the defendant was the owner of certain negotiable warehouse receipts representing the said 99 bales and 239 bales of camel hair wool, which warehouse receipts had been previously assigned to the plaintiff for prior usurious and void loans, and as consideration for the loan, agreed to maintain to the plaintiff the aforesaid negotiable warehouse receipts as security for the repayment of said loans; that upon the giving of the advance, defendant did deliver to the plaintiff promissory notes and the plaintiff retained the warehouse receipts hereinbefore described.
At page 162 of the minutes of the trial, the court asked: “You sort of renewed the loan? Is that what it was?” Answer: “ They renewed loans on the same merchandise.”
It is admitted by the defendant that the plaintiff had possession of negotiable warehouse receipts which cover the merchan *881 dise claimed to have been given as the collateral security by the defendant. Also that the warehouse receipts originally in defendant’s name were changed to the name of the plaintiff.
Such change does necessarily alter the nature of the security. You must look to the intent. Whether title is merely an equitable title to be held as security for a loan is a question of fact. (New York Security Trust Co. v. Lipman, 157 N. Y. 551, 565; Mount Tivy Winery v. Lewis, 134 F. 2d 120; Willets v. Hatch, 132 N. Y. 41; Driggs v. Dean, 167 N. Y. 121.)
Defendant insists that parol evidence should not be introduced to vary the terms of a written instrument. Surely, and especially in regard to collateral note — Exhibit 4 — the term “ collateral security — 239 bales of camel hair wool in various warehouses covered by negotiable warehouse receipts pledged to Intercontinental Credit Corporation ’ ’ would require an oral explanation without intending to vary the terms of the written instrument.
I would decide in favor of the plaintiff even upon the theory of the defendant, viz., that the collateral note speaks for itself.
Because of the nature of some merchandise and its bulk, it is of necessity placed in a warehouse and a warehouse receipt is issued. In commercial dealings and because of the impracticability of transferring physical possession, a warehouse receipt is accepted as the goods and is indeed symbolic of possession and symbolic of the merchandise. The words are often used interchangeably in trading (First Nat. Bank of Chicago v. Dean, 17 N. Y. S. 375).
Under common law, a warehouse receipt was not a negotiable instrument. However, under statutory law and in particular in New York, a warehouse receipt may be negotiable by indorsement. But similarly to a bill of lading and unlike other negotiable instruments, the value of the merchandise covered by the receipt cannot be readily determined from the warehouse receipt. Hence one must examine the merchandise to determine its value from the quantity and quality.
Section 379 of the General Business Law does not require that the advance be made upon the value of the security. It states that the advances are made upon warehouse receipts, pledged as collateral security for such repayment. Nor does this section require the agreement to be in writing except as to the amount of the interest (Wright v. Toomey, 137 App. Div. 401, affd. 204 N. Y. 661; Hawley v. Kountze, 6 App. Div. 217).
But assuming the note is the complete agreement, being a collateral note and a renewal of loans, it is not necessary to *882 repeat collateral. As stated in Matter of Stone (211 Wis. 518, 528): “ Since it appears that the note of October 7th was given in renewal of the note of September 5th, and that certain collateral pledged and delivered to the bank with the note of September 5th remained in possession of the bank, such collateral continued for the renewal note even though no reference or specific mention of the collateral was contained in such note since there was no specific agreement to the contrary.” Furthermore, through usage,' the term warehouse receipt and the merchandise it represents are used interchangeably and would connote one and the same, especially when the warehouse receipt is used as the symbol of transfer (First Nat. Bank of Chicago v. Dean, 17 N. Y. S. 375, supra). A pledgee must take possession of the pledge in order to be secure. The symbolic transfer is sufficient for this transfer. The defendant herein does not claim that he made a physical transfer of the merchandise. What other means could be used to transfer the merchandise! To accept defendant’s version of this transaction, viz., that he delivered the goods symbolically and that the warehouse receipts (which are the means of a symbolic delivery), served as collateral evidence of the property held by the plaintiff as security for the loan and as collateral evidence of plaintiff’s possession of such property, would to say the least make every transaction under section 379 a perilous undertaking by a lender. A warehouse receipt can be symbolic of delivery and generally is. But it can also be a negotiable instrument and used for other purposes. The court believes that the plaintiff has proven that the warehouse receipt was the pledge of the collateral security under the collateral note agreement so as to comply with section 379 of the General Business Law, all other requirements being admitted.
Nevertheless, the court holds that in this case there was an oral agreement between these two parties and that the collateral note was a supplemental agreement in writing to specifically cover the question of interest.
In Barker v. Bradley (42 N. Y. 316) the court held that parties may agree to rest in parol and execute written instruments in part execution of the parol agreement, and not for the purpose of putting the agreement in writing. Thus executed it does not supersede a prior parol agreement.
The proof clearly shows that these parties had agreements on these two loans which were not fully covered in the collateral note. Dealing in merchandise such as we have herein would of necessity require some understanding not covered by the collateral notes. It is only from the intent of the parties *883 that it can be determined whether on transferring a negotiable warehouse receipt, the transferee shall become the legal owner or merely an equitable owner to secure a pledge. The burden of proof is on the plaintiff to show that the note is not tainted with usury (Cohen v. Gurman, 28 N. Y. S. 2d 917 and cases cited therein).
The court therefore holds as the trier of the facts and upon the testimony and evidence adduced that the plaintiff has sustained his complaint that it was the intention of these parties to make advances upon the security of warehouse receipts with the notes as further evidence and therefore the loans were not usurious under section 379 of the General Business Law, all other requirements having been conceded or proven.
Plaintiff is entitled to judgment on the complaint and to judgment dismissing the counterclaim and judgment is so directed.
This constitutes the decision of the court as required under section 440 of the Civil Practice Act.