GEORGE B. DOUGLASS and Another, Doing Business under the Firm Name and Style of NEWBURY & COMPANY, Respondents, v. WOLCOTT STORAGE & ICE COMPANY, INC., Appellant.

Fourth Department, May 5, 1937.

*George J. Nier,* for the appellant.

*Edson W. Hamn,* for the respondents.

EDGCOMB, J. In April, 1930, plaintiffs stored in defendant's warehouse at Wolcott, N. Y., 77,810 pounds of evaporated apples and 9,265 pounds of apple chops. In the following March a leak occurred in one of the ammonia pipes connected with defendant's refrigerating plant, and the room in which said fruit was stored became filled with ammonia fumes. As a result a portion of the merchandise became discolored and damaged. Notwithstanding the fact that it was stipulated in the warehouse receipts which were issued to the plaintiffs that the storage company should not be responsible for any damage caused by leakage, negotiations were entered into between the plaintiffs and Mr. Hill, who at the time was the general manager of the defendant, looking to some sort of an adjustment of plaintiffs' loss. The result of these negotiations is a matter concerning which there is a serious dispute.

On January 20, 1932, the summons in this action was served. Defendant appeared, and on January 28, 1932, the original complaint was served. We are told on the argument and in the briefs of appellant that this was a complaint in negligence, but the pleading is not printed in the record and is not before us. On February 25, 1933, an amended complaint was served, which alleges that the " defendant assumed control of and took over to itself the aforesaid 77,810 lbs. of evaporated apples and the 9,265 lbs. of apple chops, and undertook and agreed to pay these plaintiffs therefor; that the said evaporated apples and apple chops were of the value of $5,057.65, which said sum this defendant undertook and agreed to pay these plaintiffs therefor." The case went to trial on this complaint and on the answer which denied these allegations.

The court had before it a simple action on contract. Did the defendant, after the break in its ammonia pipe and the damage to plaintiffs' merchandise, promise to take over these apples and pay the plaintiffs the agreed value? That was the issue which was tendered by the pleadings, and upon which the plaintiffs must stand or fall. Respondents say in their brief: " This is an action for the purchase price of goods had and received." They cannot succeed upon any other theory. A judgment must be based on the pleadings. (*Southwick* v. *First Nat. Bank, Memphis*, 84 N. Y. 420, 429; *Walrath* v. *Hanover Fire Ins. Co.*, 216 id. 220, 225; *Wright* v. *Delafield*, 25 id. 266; *McNeil* v. *Cobb*, 186 App. Div. 177, 182; affd., 230 N. Y. 536; *Northam* v. *Dutchess County Mut. Ins. Co.*, 177 id. 73, 75; *Reed* v. *McConnell*, 133 id. 425, 430, 431; *Truesdell* v. *Sarles*, 104 id. 164, 167; *Gordon* v. *Ellenville & Kingston R. R. Co.*, 195 id. 137, 141; *Canton Brick Co.* v. *Howlett*, 169 id. 293, 296.)

The referee before whom the case was tried has found that, " as a method of adjusting the damage and loss suffered by the

plaintiffs," the parties, on or about March 18, 1931, made the agreement alleged by the plaintiffs. We think that the overwhelming weight of evidence is against such finding.

It is true that each of the plaintiffs testifies that such a bargain was made, but they are interested witnesses, and we are not bound by their testimony.

The case was loosely tried. Hearsay evidence, as well as extraneous testimony in no way relating to the point in controversy, was permitted to becloud the issue.

The only witness who can be said to corroborate the plaintiffs in any manner is Mr. Tellier, secretary of the defendant, who testified that Mr. Hill conveyed to him the "impression that he could get a buyer for those apples and sell them; * * * that Douglass was going to turn those apples over to the cold storage." One or two other witnesses got a similar "impression" from talks which they had with Hill, but nowhere do they testify to any definite statement on the part of Mr. Hill which could be construed as any such promise or agreement.

As against this testimony we have the positive denial of Hill that he ever gave the plaintiffs any such assurance, although he frankly admits that the plaintiffs asked him to buy the merchandise and that he told them that he did not have any money to use for that purpose. There is some doubt as to his authority to buy fruit; he says that the defendant never authorized him so to do. Any such right would have to be spelled out of the general powers given him as general manager. The business of the defendant was the storage of merchandise, not its purchase. But it is not necessary to determine here just what legal power Mr. Hill had to bind the defendant.

Plaintiffs' conduct from the time of the discovery of the damage to their fruit down to the date when the amended complaint was served belies their present claim. They were constantly asserting dominion over the property long after the time they now claim this alleged sale took place.

In this discussion we must continually bear in mind the date when the plaintiffs assert that this sale took place. March 18, 1931, two days after the break in the ammonia pipe, is the time fixed by the referee.

Plaintiffs did not then own or have a right to dispose of a part of this fruit. The warehouse receipts, which were issued by the defendant for this merchandise, were transferable by indorsement. Two had been indorsed by the plaintiffs, and turned over to the Red Creek Bank long before this alleged sale to the defendant. Section 125 of the General Business Law prescribes that a person

to whom a negotiable warehouse receipt has been negotiated acquires thereby such title to the merchandise as the one negotiating the receipt had, and such title to the goods as the depositor had, or as he had ability to convey to a purchaser in good faith for value.

But we are told that this transfer was made as collateral security for plaintiffs' indebtedness to the bank. Under such circumstances the bank became vested with a qualified title to the fruit, which gave it the right to take possession of the apples upon surrender and cancellation of the receipts. (*Driggs* v. *Dean*, 167 N. Y. 121.)

Plaintiffs can hardly be heard to say that they sold, or attempted to sell, merchandise which they did not own, and to which they could not convey a good title.

On August 20, 1931, defendant wrote Mr. Douglass, one of the plaintiffs, the following letter, which the latter admits receiving:

" In compliance with your request for a definite statement of what action the Wolcott Storage would take on your claim we submit the following statement which was approved by the Board of Directors of the Storage on August 19th, 1931.

" The Board of Directors of the Wolcott Storage and Ice Company offer Douglass and Newbury, in settlement of their claim for damaged evaporated apples, to cancel all indebtedness on their part for the storage of white apples and chops. Said offer being made under the condition that all evaporated apples now owned by Douglass and Newbury in the Wolcott Storage be removed from said Storage not later than October first, 1931."

True, plaintiffs did not answer the communication, and in one sense the letter might be considered as a self-serving declaration, but it is hardly conceivable that the plaintiffs, if they had already adjusted their claim against defendant by a sale of the merchandise back in March, 1931, would have remained silent and permitted defendant to apparently forget the fact that it already owned this merchandise, and had promised to pay the plaintiffs approximately $5,000 therefor.

But this is not all. Defendant foreclosed its warehouse lien and sold the merchandise to the Gilbert Apples Products Company. Plaintiffs had notice of these proceedings, and drew the apples away for the purchaser. Later defendant sued the buyer for the purchase price. The storage charges and costs were paid to the defendant, and the balance was turned over to the plaintiffs. This does not indicate ownership of the fruit in the defendant.

Further conduct on the part of the plaintiffs, which negatives beyond question their present claim, is found in applications made by them to the Commissioner of Agriculture and Markets for extensions of time for keeping the apples in cold storage.

Section 240 of the Agriculture and Markets Law provides that no food shall be kept or permitted to remain in cold storage for a longer aggregate period than twelve months, except by order of the Commissioner. Notwithstanding the fact that plaintiffs now claim to have sold the apples and chops to the defendant on March 18, 1931, in which event they would have had no further interest in the fruit, plaintiffs, on June 12, 1931, made application to the Commissioner of Agriculture and Markets for an extension of time to keep this same merchandise in defendant's warehouse, and gave as the reason for their request the fact that they (plaintiffs) had not been able to get their damages adjusted. Their petition was granted as to the apples. Again, on April 18, 1932, we find the plaintiffs soliciting a further extension, and giving as the reason for their action the fact that there was " no market at the present time." The execution of these documents by the plaintiffs, and their request to the Department, are irreconcilable with their present claim.

The chops were not included in the extension which was granted, the reason being, as stated by the Department, that they had a musty odor, and were full of hay, dirt and string. During the summer of 1931 plaintiffs wrote the Department three letters concerning these chops, in one of which they stated that they had " had an offer on them about a month ago, and the people told us they would make apple butter of them." Why should plaintiffs be negotiating the sale of these chops in the latter part of June, if they had sold them to the defendant the previous March?

Other instances might be referred to, but enough has been said to show beyond question that plaintiffs' present claim is an afterthought, and that it cannot be sustained.

The judgment should, therefore, be reversed on the facts, and judgment should be ordered for the defendant. Certain findings of fact and conclusions of law should be disapproved and reversed and new findings and conclusions made.

Present — SEARS, P. J., EDGCOMB, CROSBY and CUNNINGHAM, JJ. All concur; THOMPSON, J., having been present at the argument of said appeal, but having died on the 7th day of April, 1937, without having taken any part in the determination of this appeal.

Judgment reversed on the facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.