THE ELECTRIC EQUIPMENT CORPORATION, Respondent, *v.* DELCO APPLIANCE CORPORATION, Appellant.

Fourth Department, June 30, 1937.

*J. Sawyer Fitch*, for the appellant.

*Arthur VD. Chamberlain*, for the respondent.

EDGCOMB, J. Defendant, a subsidiary of the General Motors Corporation, is engaged in the manufacture and sale of lighting plants designed to supply electric current to persons beyond the reach of public service lines. These plants consist of a gasoline engine, generator and battery, together with the necessary wiring. As the life of the average battery is less than that of the generator, it must, of necessity, be renewed from time to time. Especially is that so if the battery is defective.

Plaintiff, a corporation organized and existing under and by virtue of the laws of Iowa, alleges in its complaint that during the years 1927 to 1930, inclusive, it had been appointed distributor of defendant's product in the State of Iowa, and that, in the course of its employment, it replaced a number of batteries used in connection with the lighting plants, after the sale and delivery of the plant itself; that in many instances the dealer or customer paid for the new battery less than the regular sale price fixed by the defendant, and that, by reason thereof, plaintiff lost the usual and accustomed profit which it made on a normal sale. This action is brought to recover the difference between the regular selling price to the dealer and the amount actually received from the customer or dealer for the new battery. This sum the plaintiff has chosen to designate in its complaint as the cost to it of making these replacements.

The propriety of the judgment entered in plaintiff's favor is challenged upon this appeal.

The duties, rights and obligations of the respective parties are fixed by five distributor's agreements, dated respectively February 1, 1927, September 15, 1929, January 1, 1930, April 8,

1930 and January 15, 1931, all of which are similar in their general provisions, and which specify in great detail the covenants and agreements between the signers.

We are met at the outset with the fact that the first three of these contracts are not signed by the plaintiff, but by " Joseph Kimmel, distributor, doing business as the Electric Equipment Co." in one instance, by " The Electric Equipment Co., distributor, by Joseph Kimmel " in another, and by " The Electric Equipt Co., distributor, by Joseph Kimmel, Prop." in the third. The last two agreements are signed " The Electric Equipment Corporation, distributor, by Joseph Kimmel, President and Treas." It appeared from the cross-examination of Mr. Kimmel that the plaintiff was not incorporated until January, 1930, and that prior to that time he personally, except during the war period, was doing business under the assumed name of " Electric Equipment Company."

Assuming for the moment that the distributor was entitled to recover for services, or cost, or loss of profits for replacing these defective or worn out batteries, it is difficult to conceive how the plaintiff, which was not in existence until January, 1930, and which never had any contractual relation with the defendant until April 8, 1930, is entitled to any part of such recovery accruing prior to the latter date on a complaint which alleges that "the defendant agreed to indemnify and reimburse plaintiff of [for] the cost to him of all such adjustments and replacements," and that the " plaintiff incurred as the cost of such replacements and adjustments " the sums mentioned, and on no proof whatever of any assignment of the claim of the distributor named in the agreements, or of any subrogation of the plaintiff to Mr. Kimmel's rights in the premises.

This question was squarely brought to the attention of the court by a request to charge that the plaintiff could not recover for any replacements or adjustments made prior to April 8, 1930, as it appeared from the evidence that the contracts made prior to that date were not made with the plaintiff. The refusal to charge as requested constituted error.

A party can recover only in harmony with his proofs and his pleadings. A judgment must be *secundum allegata et probata.* (*Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220, 225; *Reed* v. *McConnell*, 133 id. 425, 434; *Bradt* v. *Krank*, 164 id. 515, 519; *Truesdell* v. *Sarles*, 104 id. 164, 167; *Douglass* v. *Wolcott Storage & Ice Co., Inc.*, 251 App. Div. 79.)

Plaintiff's attempt to reform the complaint is unavailing. At the close of the evidence a motion was made to amend the complaint to conform to the evidence, but plaintiff refused to state in what

particulars it wished to change its pleading. The motion was denied. After the verdict had been rendered, and after defendant's motion for a new trial had been made and argued, plaintiff again moved to amend the complaint to conform to the proof by alleging that any claims arising under the three contracts signed by Mr. Kimmel personally became and were the property of the plaintiff before the commencement of this action, and that Mr. Kimmel was estopped from claiming otherwise. This motion was granted, and defendant excepted.

While the allowance of an amendment to a pleading during trial rests largely in the discretion of the court, and while there may be occasions when a plaintiff might properly be permitted to change his complaint even after a verdict, the rule seems to be well settled that, if a plaintiff fails to prove the cause of action set up in his complaint, he should not be permitted, after the verdict has been rendered, to amend his pleading to conform to the proof, and thus save the verdict. A party is entitled to know before the case goes to the jury just what issue he is called upon to meet. One cannot be said to have had his day in court when a verdict is permitted to be upheld upon an issue which was never submitted to or passed upon by the jury. (*Northam* v. *Dutchess County Mutual Ins. Co.*, 177 N. Y. 73, 75.) This amendment came too late, and the granting of the motion under all the circumstances was an abuse of discretion.

But even if the reformation of the complaint had been proper, the proof does not justify a recovery by the plaintiff for any services performed or loss which occurred prior to April 8, 1930.

The plaintiff is a separate legal entity from Mr. Kimmel, and in fact from its own stockholders, officers and directors. Except as we may infer from the fact that Mr. Kimmel signed the name of the plaintiff to the last two distributor's agreements as its president and treasurer, there is no evidence in the case to connect him with the corporation. The suggestion of counsel that Mr. Kimmel and the plaintiff are one and the same being, or that plaintiff took over Kimmel's rights under the first three distributor's agreements by virtue of the provisions of section 90 of the Stock Corporation Law has no force. There has been no consolidation of corporations here. Besides, plaintiff is an Iowa corporation, and is in no way affected by the statutes of this State, except as to its right to do business here. There is no evidence from which it could be said that the plaintiff has succeeded, by assignment or otherwise, to any claim of Kimmel, or that it has the right to recover on any theory for anything which happened prior to April 8, 1930.

But the defendant does not rest here. It disputes the right of the plaintiff to any judgment, even though the transaction upon which the recovery is based took place after April 8, 1930. This question necessitates an examination of the agreement between plaintiff and defendant, in an effort to determine just what the arrangement between the two actually was. As was said a space back, the various distributor's agreements define in great detail the rights, duties and obligations of the respective parties. Each contract provides that it shall continue in force, and shall " govern all relations and transactions between the parties " until canceled or terminated. The net price which the plaintiff agrees to pay the defendant for the plants and batteries is specified. In each contract we find the following pertinent provision: " It is declared by both parties that there are no oral or other agreements or understandings between them affecting this agreement, or related to the selling or servicing of Delco-Light Products. This agreement supersedes all previous agreements between the parties." It is also stipulated that the distributor shall provide and maintain, at its own expense, an efficient installation and maintenance service in accordance with instructions issued by the defendant, and shall " see that all necessary repairs to and replacements of Delco-Light Products in the said territory are promptly and properly made," and shall " use every reasonable effort to maintain a standard of service consistent with Delco-Light policy." In the last agreement, the one under date of January 15, 1931, we find a statement that the defendant makes no warranty in connection with its products, or their repair or replacement parts, except to warrant that the products are free from defects in material and workmanship under normal use and service, and that defendant's obligation under the warranty is limited to making good at the factory any parts which, within one year after delivery to the original purchaser, should be returned, and should prove to be defective.

Nowhere in any of these contracts is there a suggestion, much less an agreement, that the distributor should be made good for the profit which he would make on a usual and normal sale, in case a replacement is made, and a concession in the price of the part is made to the customer to keep him satisfied. This fact is significant in view of the provision that the written agreement governed all the transactions between the parties, and that there were no oral or other agreements or understandings between them relating to the selling or servicing of defendant's products.

The undisputed evidence shows that the distributor, both the plaintiff and its predecessor, sold the various replacement batteries in question during all these years from 1928 to 1931 for more than

they paid the defendant, so that there was some profit on each battery.

While plaintiff concedes that on the face of the contracts as they stand there could be no recovery, it asserts that the agreements must be construed and interpreted in the light of the custom which existed from 1916 to 1927, prior to the time the present controversy arose, and prior to the date of its incorporation, and which custom plaintiff insists should be read into these agreements. Accordingly plaintiff was permitted, over defendant's objection and exception, to show by oral testimony that in 1916, fourteen years prior to the birth of the plaintiff, an arrangement was made between Mr. Kimmel and Mr. Kettering, who was then an officer of the defendant, whereby the defendant agreed to make an adjustment with the distributor whenever replacements were found to be necessary. Mr. Kimmel was rather indefinite as to just what this arrangement was, but giving his testimony the most favorable inference to which it is entitled, it may be said that at that time the defendant agreed to reimburse the then distributor the difference between the cost of the part replaced and the normal selling price, or as the witness puts it, " an adjustment within that range somewhere." Upon this rather unsatisfactory testimony the trial court permitted the jury to say whether that policy was incorporated in the five agreements in question, and whether under all the circumstances defendant had assumed the obligation to pay the plaintiff the difference between what it actually sold the replacement battery for and the price which it would have received had the battery been sold to the dealer or customer for the list price.

The rule is well settled that all prior negotiations between the parties to a written contract are merged in the writing, and that, when the instrument is complete upon its face, oral testimony is inadmissible to contradict, vary, add to, or subtract from its terms. (*Newburger* v. *American Surety Co.*, 242 N. Y. 134, 142; *Thomas* v. *Scutt*, 127 id. 133, 137; *Lese* v. *Lamprecht*, 196 id. 32, 36; *Higgs* v. *deMaziroff*, 263 id. 473.)

Plaintiff does not question this rule, but insists that it has brought itself within the well recognized exception that where the instrument is incomplete, either obviously or at least possibly, oral testimony may be received to complete the entire agreement, of which the writing was but a part. (*Thomas* v. *Scutt*, 127 N. Y. 133, 138; *Eighmie* v. *Taylor*, 98 id. 288.)

Plaintiff bases its claim in this particular on the clause in the written instruments wherein the distributor agrees to provide and maintain at his own expense an efficient installation and main-

tenance service in accordance with instructions issued by the defendant from time to time, and wherein the distributor covenants " to see that all necessary repairs to and replacements of Delco-Light Products in the said territory are promptly and properly made, and to use every reasonable effort to maintain a standard of service consistent with Delco-Light policy."

True, the written instruments fail to specify any detailed instructions regarding the service to be maintained by the distributor, but it will be noted that such directions are to be given " from time to time " in the future. Clearly this provision has no reference to an instruction given or custom inaugurated back in 1916 and in vogue before the execution of the distributor's agreements in question. Especially is that true when we give due weight to the clause that the contract supersedes all previous agreements between the parties.

Neither is the " Delco-Light policy " defined in any of the written instruments. If the course of conduct of the defendant in the past was material, it could doubtless have been shown by parol evidence. But the " policy " referred to in this clause of the contract refers, not to the arrangement which had existed between the defendant and its distributors in the past regarding allowances to be made the latter for replacements, but rather to the standard of service maintained by the defendant to the public, and to its customers. The oral testimony received had no bearing on that subject, and did not tend to complete or amplify this clause of the agreement.

The receipt of this oral testimony was objected to, and the attention of the trial court was directed to the fact that its only tendency was to vary, change or modify the written agreements. The instruments themselves, therefore, constitute the entire contract, and must be resorted to exclusively as proof thereof. (*Higgs* v. *deMaziroff*, 263 N. Y. 473.)

Plaintiff's claim is made up of loss of profits on various batteries sold for replacement purposes covering the years 1928, 1929, 1930 and 1931, an itemized list of which is attached to the complaint. During all this period the defendant never acknowledged, by payment or otherwise, plaintiff's claim in this regard. If any such agreement as the plaintiff now claims exists was ever made, it is rather significant that after defendant had failed to recognize its obligation the distributor made four new contracts, in each of which he failed to include a single syllable indicative of any such agreement. Why the distributor overlooked so important an item is not explained.

It follows that the judgment should be reversed on the law, with costs, and, as it is apparent that the parties must stand or fall on the written contracts under which the plaintiff is not entitled to recover, the complaint should be dismissed, with costs.

All concur, except CUNNINGHAM, J., who dissents as to the dismissal of the complaint and votes for granting a new trial. Present — SEARS, P. J., EDGCOMB. LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment and orders reversed on the law, with costs, and complaint dismissed, with costs.