HAWLEY v. KOUNTZE et al.

(Supreme Court, Appellate Division, Second Department. June 16, 1896.)

USURY—LOAN SECURED BY NEGOTIABLE INSTRUMENTS AS COLLATERAL.
 A note bearing 6 per cent. interest, given for money loaned, secured by the deposit of certificates of shares of stock as collateral, together with an agreement that the lender may within a certain time purchase the shares of stock at a certain price, is valid, under Laws 1882, c. 237, which provides that, where money is advanced on negotiable instruments as collateral security, it shall be lawful to receive, or to contract to receive and collect, as compensation for making such advances, any sum, to be agreed on in writing by the parties. 38 N. Y. Supp. 327, reversed.

Appeal from special term, Kings county.

Action by Frank W. Hawley against Herman Kountze and others to enjoin defendants from selling certain shares of stock deposited with them by plaintiff. From an order continuing a preliminary injunction pendente lite (38 N. Y. Supp. 327), defendants appeal. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BART-LETT, and HATCH, JJ.

George W. Van Slyck, for appellants
James McKeen, for respondent.

BARTLETT, J. The plaintiff borrowed $15,000 from the defendants, constituting the firm of Kountze Bros., and gave them a note therefor, whereby he promised to pay that amount on demand, with interest at 6 per cent. The payment of this note was secured by the pledge of 14 shares of the capital stock of the Cataract General Electric Company. At the time the loan was thus made the plaintiff gave to William H. Hollister, one of the defendants, an agreement to sell to him, at his option, to be exercised within a specified period, four shares of such stock, at $2,000 a share. The plaintiff claims that the stock was then worth more than $2,000 a share, and that the giving of this option to Mr. Hollister, who was acting in behalf of the defendants' firm, made the transaction usurious. It seems to us, however, that it falls within the purview of chapter 237 of the Laws of 1882, and is not void, or in any respect illegal, on account of usury. That act provides as follows:

"In any case hereafter in which advances of money, repayable on demand, to an amount not less than five thousand dollars, are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral secu-

rity for such repayment, it shall be lawful to receive or to contract to receive and collect, as compensation for making such advances, any sum to be agreed upon, in writing, by the parties to such transaction."

The learned judge at special term held that the act of 1882 had no application to the present case, because the exaction in excess of interest was not a sum of money, nor was it provided for by a written agreement. We think that the statute should receive a more liberal construction. The payment in excess of 6 per cent. was whatever amount, over $2,000 a share, should be realized by the defendants upon the exercise of the option to purchase the four shares of Cataract General Electric stock. The giving of a written instrument,—the option agreement,—by acting under which a sum of money could ultimately be obtained in addition to the statutory rate of interest, was equivalent to an express agreement in writing to pay such sum of money. But, in the view which we take of the act of 1882, the only importance of an agreement in writing as to the sum to be received by the lender is to enable the lender to collect more than 6 per cent. as his compensation. The effect of that enactment was to remove from the operation of the usury laws of the state all loans of money, payable on demand, where the amount lent or advanced is not less than $5,000, and where warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds, or other negotiable instruments are pledged as collateral security for such repayment of the money borrowed. If the agreement is merely oral, as to the compensation to be received by the lender in such a transaction, we think that the statute nevertheless makes the loan nonusurious, though it would seem that a contract in writing is necessary in order to enable the lender to collect more than 6 per cent. In 1850 a statute was enacted in this state (Laws 1850, c. 172) which provided that no corporation should thereafter interpose the defense of usury, and it was held that its effect was to repeal the statute of usury so far as it applied to corporations (Curtis v. Leavitt, 15 N. Y. 85–155). "The condition of this class of beings becomes the same," said Brown, J., "as if the usury law never existed." See, also, Bank v. Hoge, 35 N. Y. 65. A similar effect, we think, was produced by the enactment of chapter 237 of the Laws of 1882 upon all demand loans, of $5,000 and upward, secured by the pledge of negotiable instruments. Such loans were thereby withdrawn from the operation of the general usury law of the state. As to them the general usury law then ceased to exist. If these views be correct, there was nothing usurious in the transaction which forms the subject-matter of the present suit, and the plaintiff is not entitled to any injunction.

The order continuing the preliminary injunction should be reversed, and the injunction vacated, with $10 costs and disbursements. All concur.