Reuben W. Wright and David S. Wright, Plaintiffs, *v.* Daniel
F. Toomey and Charles J. Wirtner, Defendants, Impleaded
with John S. Lambert.

Fourth Department, March 9, 1910.

**Usury — bills and notes — demand note for over $5,000 secured by
stock.**

A demand note for $5,500, of which $500 is compensation for the loan, secured
by the pledge of certificates of stock, is not void for usury.

Such note is within section 379 of the General Business Law, providing that where
advances of money repayable on demand, to an amount not less than $5,000, are
made upon warehouse receipts, bills of lading, certificates of stock, bills of
exchange, bonds or other negotiable instruments pledged as collateral security,
it shall be lawful to contract for any compensation for the advance which the
parties may agree upon in writing.

Such note is not void, because it does not show what part thereof comprised the
compensation and what part the loan.

Motion by the defendants, Daniel F. Toomey and another, for a
new trial upon a case containing exceptions, ordered to be heard at the
Appellate Division in the first instance, the verdict of a jury having
been rendered by direction of the court in favor of the plaintiffs
against the said defendants, after a trial at the Chautauqua Trial
Term in May, 1909.

*Elton D. Warner*, for the plaintiffs.

*Herman J. Westwood* and *Lester F. Stearns*, for the defendants
Toomey and Wirtner.

Spring, J.:

In June, 1904, the plaintiffs were copartners in business under
the name of the Lake Shore Seed Company. On the fourth day of
that month they accepted the note in suit made by the defendant
Toomey, as maker, and the defendant Wirtner as indorser. The
note was dated May 12, 1904, given for $5,500, payable on demand,
with use, to the order of the defendant Wirtner. It was expected
that the note would be negotiated at the Fredonia National Bank,

where it was made payable and in whose custody it remained until delivered over to the plaintiffs by the defendant Toomey.

The defendants received in cash for the note $5,000, so that the plaintiffs received in excess of the legal rate of interest $500.

The defendants had each subscribed for twenty-five shares of the capital stock of the Land and Petroleum Company, a corporation with a capital stock of $25,000, divided into shares of $100 each. The note was made to enable the defendants to raise the money to pay for the certificates of stock in this corporation, and the avails of the note were used for that purpose. The loan or advance was made upon the agreement of the defendants at the time the note was delivered to assign and transfer to the plaintiffs as collateral security for the repayment of the money advanced the certificates of the fifty shares of such stock purchased with the $5,000 paid to them by the plaintiffs, and this transfer was in fact duly made in compliance with the agreement. The defendant Wirtner, although in form an indorser, was, in fact, equally interested with Toomey in the project, and also with like liability on the note. There was also an accommodation indorser on the note who does not defend.

The investment made by the purchase of the stock proved to be a profitable one, but the defendants resist the payment of the note on the ground that it was usurious and the defense is a bar to any recovery, unless the plaintiffs are within chapter 237 of the Laws of 1882 (revised into General Business Law [Consol. Laws, chap. 20; Laws of 1909, chap. 25], § 379).

Section 1 of this statute reads as follows: " In any case hereafter in which advances of money, repayable on demand, to an amount not less than five thousand dollars, are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, it shall be lawful to receive or to contract to receive and collect, as compensation for making such advances, any sum to be agreed upon, in writing, by the parties to such transaction."

The provisions of the act were complied with so far as the kind of loan and the sum of money advanced, and it was made upon certificates of stock; but the defendants contend that the compensation received for making the advance was not specified in writing.

The entire sum of $5,500, which the defendants agreed to pay, was contained in the note and included $500 compensation. A separate agreement pertaining to the compensation was not required by the statute. Nor was it necessary to state in the written contract fixing the full liability of the defendants precisely what comprised compensation and what money actually advanced. There is no limitation upon the amount which the parties may agree on as the compensation, and no controversy can arise over it where a note is delivered at the time the agreement is entered into and which measures the extent of the liability of the promisor. If the money is advanced upon the oral agreement of the borrower to pay and compensation in excess of the lawful rate of interest is agreed upon, that agreement probably should be in writing for the reason that there is no written obligation at all and the amount to be repaid would depend entirely upon oral proof. That reason does not obtain where the transaction is evidenced by a promissory note which includes both the compensation and the advance made. The maker of the note then knows what he has to pay, and the requirements of the statute have been complied with, and there is no ambiguity and nothing to be proved by parol, when an action is brought on the note.

While the statute has been in force since 1882, apparently it has not been fruitful in litigation. In *Hawley* v. *Kountze* (6 App. Div. 217) a loan of $15,000 had been made upon shares of stock, and the claim was made in defending against the notes evidencing the indebtedness that the amount of the compensation in excess of the interest must be provided for in writing. The court held otherwise, and used this language in commenting upon the scope of the statute (at p. 219): "But in the view which we take of the act of 1882, the only importance of an agreement in writing, as to the sum to be received by the lender, is to enable the lender to collect more than six per cent as his compensation. The effect of that enactment was to remove from the operation of the usury laws of the State all loans of money payable on demand, where the amount lent or advanced is not less than $5,000, and where warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments are pledged as collateral security for such repayment of the money borrowed. If the agreement is merely

oral, as to the compensation to be received by the lender in such a transaction, we think that the statute, nevertheless, makes the loan non-usurious; though it would seem that a contract in writing is necessary in order to enable the lender to collect more than six per cent."

Similar provisions contained in statutes in other jurisdictions have received a like construction. (*Tribble* v. *Anderson*, 63 Ga. 31, 56; *Cameron* v. *Merch. & Mfgs. Bank*, 37 Mich. 240, 244; *Matter of Samuel Wilde's Sons*, 133 Fed. Rep. 562, 566.)

The authority upon which the defendants mainly rely is *Rosenbluth* v. *Dunn* (41 Conn. 619). The statute* construed in that case prohibited a greater rate of interest than six per cent per annum, "except when the agreement to pay such greater rate of interest is in writing." The requirement of the statute was explicit and unmistakable, and the court so held.

The defendants' exceptions should be overruled and motion for new trial denied, with costs, and judgment ordered for the plaintiffs on the verdict, with costs.

All concurred.

Defendants' exceptions overruled, motion for new trial denied, with costs, and judgment directed for the plaintiffs upon the verdict, with costs.

---

Rose M. Urtz, as Administratrix, etc., of Richard M. Urtz, Deceased, Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

Fourth Department, March 9, 1910.

Fraud — release procured by fraud — remedies — action on original claim without rescinding release or tendering restitution — Statute of Limitations.

One who has been induced by fraud to execute a release of a cause of action has three remedies: (1) He may rescind the agreement and prosecute the original claim, but in that case the money received for the release must be returned or tendered before action; (2) he may affirm the compromise agreement, retain the

---

* Conn. Public Acts of 1872, chap. 16.— [Rep.