FRANK E. BRUMLEY and Others, Plaintiffs, *v.* MYRON W. ROBINSON, Defendant.

Supreme Court, New York County, May, 1923.

Negotiable instruments — notes given to secure payment of balance on margin account — when stockbrokers may exact more than six per cent interest.

Section 379 of the General Business Law, which permits interest upon advances on collateral security, removes from the operation of the usury laws all loans of money payable on demand where the amount advanced is not less than $5,000 and where certificates of stock are pledged as collateral security for the repayment of the loan.

In an action to recover upon two promissory notes which on their face drew no interest, both made and delivered by defendant to plaintiffs who are stockbrokers as security for the payment of his account with them, the defense was lack of consideration and usury. Upon the trial it appeared that for about four years defendant through plaintiffs as his brokers had bought and sold stock on margin, plaintiffs supplying the difference between the margin put up by defendant and the cost of the certificates, charging him interest, at times in excess of six per cent, on the money so advanced to complete the transactions. At no time did plaintiffs receive any moneys in payment of interest on the marginal account, the debit balances of which were payable on demand. Defendant conceding that usury if any was upon the account and not upon the notes testified that there was no agreement as to what interest was to be charged except as disclosed by the account itself. It clearly appeared from the evidence that from the opening of the account to its close, stock certificates were at all times held by plaintiffs as collateral security for money advanced by them to enable defendant to purchase the stock carried in the account; that the account was open, that the time for its payment was never extended and that the notes in suit, which were time notes, were given as collateral security. *Held*, that as the balance in the account was always payable on demand either directly or through a sale of the securities, said balance was always in excess of $5,000 and the certificates of stock were always held as

collateral, plaintiffs were entitled to charge interest on the account in excess of six per cent per annum.

Defendant having failed to establish the defense pleaded, plaintiffs' motion for the direction of a verdict will be granted with direction for the entry of judgment in their favor for the amount of the notes with interest to the date of the rondition of judgment.

ACTION on notes.

*Alexander & Keenan* (*Joseph A. Keenan* and *T. Sherman Class*, of counsel), for plaintiffs.

*James S. McDonough* (*Joseph A. McLaughlin*, of counsel), for defendant.

COHALAN, J. The plaintiffs, who are stockbrokers, sue on two promissory notes, which on their face draw no interest, one for $5,100, the other for $5,000, both made and delivered to them by the defendant. The defense is lack of consideration and usury.

The defendant had a marginal account with the plaintiffs, and through them as his brokers, for a period of about four years, bought and sold stocks in the usual marginal manner, the defendant putting up a certain amount of money for margin and the plaintiffs supplying the difference between the margin and the cost of the certificates and charging the defendant interest on the moneys advanced by them to complete the transactions. The interest charged was at times in excess of six per cent, and it is this excess charge that defendant claims as usury. He concedes if there is any usury it is usury upon the account and not usury upon the notes. On the date the account was opened it showed the defendant's indebtedness to plaintiffs to be some $9,000-odd, and that the plaintiffs carried for the defendant various stock certificates as collateral. From that date up to November 9, 1922, when the account was sold out, the account showed the indebtedness at all times to be in excess of $5,000, and that at all times the plaintiffs held certain stocks as collateral security. In December, 1919, the debit balance was approximately $21,000, and the plaintiffs were still carrying as collateral certain stocks. The following month they sought additional margin of security, and the defendant gave his note for $15,000, payable in three months. The note was renewed several times and up to December, 1921, at which time defendant gave three notes of $5,000 each in its place. At this time the debit balance on the account was approximately $21,000, and the plaintiffs were still carrying various stock certificates as collateral. These notes were discounted, as suggested by the defendant, who had agreed to pay all expenses incident thereto. The proceeds were deposited in the plaintiffs' name and drew interest

from two and one-half to three per cent. The discount rate was six per cent. The difference was charged to the defendant's account. The first entry in the account as to notes was December, 1921, and covered the three notes last mentioned. No entry is found with regard to the earlier note of $15,000 or its renewals. Interest was charged on the debit balances on the account in excess of six per cent, but no interest was charged on the notes. On June 1, 1922, the defendant gave the note set forth in the first cause of action. On that date the debit balance was approximately $25,000, and the plaintiffs were carrying certain stock certificates as collateral. On June 29, 1922, the defendant gave the note set forth in the second cause of action. On that date the debit balance was approximately $23,000 and the plaintiffs still carried various stock certificates as collateral. In October the plaintiffs notified the defendant that they would sell his securities on October thirty-first. He saw the plaintiffs and it was agreed between them that they would not sell the securities before November ninth, and the defendant agreed that if by that date he did not take up his indebtedness the securities could be sold without further notice to him. The defendant failed to take up the indebtedness, and the securities were sold on that date for $24,000. This amount was applied to defendant's account, leaving a balance of $12,800 indebtedness.

The plaintiffs contend and the testimony sustains them that they did not extend the time of payment of the defendant's debit balance on the account, but did renew the $15,000 note. From the date of that note to its maturity the plaintiff carried the account as an open one and charged defendant interest on that balance, but not on the note. After the discount of the three $5,000 notes the only charge they made against these notes was the difference between the discount interest and the interest received from the deposit of the proceeds. It might be well to note that at no time did plaintiffs receive any moneys in payment of interest on the defendant's account.

The usury defense is based upon the claim that the notes were founded upon an agreement between the parties for loans at usurious rates of interest, and hence the notes were void, the notes themselves on their face drawing no interest. The defendant conceded at the trial that usury, if any, was upon the account and not upon the notes. He testified that there was no agreement as to what interest he was to be charged upon the account except what may be found in the account itself.

The sole issue is, Was there usury charged to the defendant in the account, and, if so, does it make the notes void? Whether

51

there was usury or not depends upon whether or not the transactions in question come within the provisions of section 379 of the General Business Law. That section permits interest upon advances on collateral security. It provides that wherever advances of money repayable on demand to an amount not less than $5,000 are made upon certificates of stock pledged as collateral security for such repayment " it shall be lawful to receive or to contract to receive and collect as compensation for making such advances any sum to be agreed upon in writing by the parties to such transaction."

The account was a marginal one, and the debit balances were payable on demand. The testimony clearly shows that from the opening of the account to its close stock certificates were at all times carried as collateral security by the plaintiffs for the moneys advanced by them to enable the defendant to purchase the stock carried in the account; that the account was open, and that its payment was never extended, and that the notes were given as collateral.

I have carefully considered whether or not there was an extension of time of the payment of the account, and I am unable to see any proof that there was. It is true, too, plaintiffs extended the time of the payment of the $15,000 note. It is also true that the present notes are time and not demand notes. But these notes were not a payment of the account. They were taken as security and the renewal in the one case and the fact of time notes in the other would not operate as an extension of the payment of the account.

The effect of section 379 of the General Business Law has been to remove from the operation of the usury laws all loans of money payable on demand where the amount advanced was not less than $5,000 and where certificates of stock were pledged as collateral security for the repayment of the loan. *Matter of Hawley* v. *Kountze*, 6 App. Div. 217; *Wright* v. *Toomey*, 137 App. Div. 401; affd., 204 N. Y. 661. See, also, *Matter of Wilde's Sons*, 133 Fed. Rep. 562; affd., 144 id. 972.

The defendant contends that the cases mentioned can be distinguished in that in those cases the lenders were bankers. A careful examination shows that the decisions are based upon the provisions either of section 379 of the General Business Law or of the act of 1882, which is now section 379 of the General Business Law — and not upon the provisions of the Banking Law.

The defendant questions the application of section 379 to the present case, claiming that here there was no written agreement. The importance of an agreement in writing as to interest is to

enable the lender to collect more than six per cent as compensation. *Hawley* v. *Kountze, supra.* The court there held that the statute, nevertheless, made the loan non-usurious. It is well to note here that the plaintiff is not attempting to collect more than six per cent as a comparison of the figures of the unpaid balance on the account and the amount sued for on the notes will show.

The defendant also claims that because the notes were time and not demand notes the plaintiffs are not entitled to the benefits of the law referred to. But it is admitted that there was no usury in the notes, and that the usury, if any, was in the account. The notes were given as security for the debt in the account; the balance due in the account was always payable on demand either directly or through a sale of the securities and was always in excess of $5,000 and certificates of stock were always held as collateral. The plaintiffs, therefore, were entitled to charge interest on the account in excess of six per cent per annum.

Upon the trial the defendant testified that the only agreement about interest was what appears in the account, and that the plaintiffs did not say anything to him about the rate of interest that would be charged to him. In effect the defendant asks that usury be inferred from the amount of interest charged to him in the account. The courts have repeatedly held that there can be no presumption of an illegal or usurious intent; that the burden rests upon the party seeking to impeach the transaction for usury to prove the illegal intent; that usury cannot be established by surmise or inference. *Rosenstein* v. *Fox*, 150 N. Y. 354; *Morton* v. *Thurber*, 85 id. 550; *Brown* v. *Robinson*, 224 id. 301, 315, 318.

I am unable to see where the defendant has shown usury or lack of consideration in the notes.

The case presents an interesting question of law, and the court is indebted to the counsel on both sides for the clear and exhaustive manner in which the authorities have been collated and presented. It has resulted in making light the burden of examination that so frequently falls upon the court.

The motions made under the stipulation are disposed of as follows: The defendant's motion for direction of a verdict is denied and the plaintiffs' motion for a like direction is granted. Judgment directed for plaintiffs in the sum of $10,100, plus interest to date. Submit accordingly.

Judgment accordingly.