Chief Judge Desmond.
 

 On November 15,1962 plaintiff loaned to defendant Richter $150,000 on a long-form promissory note which stated that interest was to be at the rate of 10% per year and the payment was to be “On Demand”. As collateral security plaintiff received “ over the counter ” corporate stock (some on November 15 and some, as agreed, a few days later) then valued in the market at $64,600, or a little more than 40% of the amount loaned. Defendants Wolf, Spilky and Eckhaus signed and delivered to plaintiff their guarantees of payment of the note. The three guarantors are principal officers and stockholders of Wolf Corporation, which deals in real property, and the money was borrowed to finance defendant’s purchases of,Wolf Corporation stock. Later the pledged stocks sharply declined in price. In April and September, 1963 payments on the note totaling $17,132.78'were made with moneys realized from the sale of some of the Wolf Corporation stock pledged with plaintiff, and another principal payment of $2,867.22 reduced the principal to $130,000 which has not been paid and for which (with interest as hereafter explained) plaintiff obtained against all the defendants the summary judgment here appealed from. Interest on the note was paid to May 1, 1964.
 

 In July, 1964 plaintiff, on service of a summons but no complaint and on affidavits showing the above facts, used the procedure authorized by CPLR 3213 in an action on an “ instrument for the payment of money only ’ ’ and moved for summary judgment. Defendants by answering affidavits and argument asserted that plaintiff had no valid cause of action. They argued that, despite section 379 of the General Business Law (now General Obligations Law, § 5-523) hereafter discussed, this loan was usurious because it was in reality made for one year and
 
 *171
 
 not “ On Demand ” as written, also because the property pledged as collateral security to the note was worth far less than the amount loaned and because there was other security (the guarantees) not of the kind listed in former section 379 of the General Business Law.
 

 Special Term granted plaintiff a partial summary judgment, awarding it the principal amount unpaid on the note plus 10% interest but reserving for further disposition plaintiff’s claim for a 15% attorney’s fee as provided for in the note. The Appellate Division, by a modification from which plaintiff does not press its appeal, reduced the recovery, holding that after default (date of last payment of interest) interest accrued at the rate of 6%, not 10%. Both courts held that the note complied with section 379 of the General Business Law, and was, therefore, exempt from the 6% maximum interest or usury law (General Obligations Law, § 5-501) and that defendants’ affidavits raised no triable issue.
 

 To begin with, it would seem that any issues presented here are of law, not fact. Section 379 of the General Business Law, which without material change had been on the books since 1882, read thus as of the date the note was given: “In any ease hereafter in which advances of money, repayable on demand, to an amount not less than five thousand dollars, are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, it shall be lawful to receive or to contract to receive and collect, as compensation for making such advances, any sum to be agreed upon in writing, by the parties to such transaction.” No decision is found in this court discussing the genesis and intent of this old statute (but see
 
 Wright
 
 v.
 
 Toomey,
 
 204 N. Y. 661, affg. without opn. 137 App. Div. 401, where the law is explained and validated) but it cannot be doubted that it means just what it says and that probably, because of the difficulty of obtaining 6% interest on essentially temporary loans, the Legislature exempted from the usury law restrictions as to amount of interest, demand loans made on the security of the kinds of property described. As Justice Willard Bartlett (later of this court) described the effect of the statute in 1896 in
 
 *172
 

 Hawley
 
 v.
 
 Kountze
 
 (6 App. Div. 217, 219): “ Such loans were thereby withdrawn from the operation of the General Usury Law of the State. As to them the General Usury Law then ceased to exist.” Justice Bartlett called attention to the still earlier exemption from usury prohibitions of loans made to corporations.
 

 How, then, do defendants seek to bring the usury laws back into the picture? Principally by trying to prove that plaintiff (then before name change known as Israel Foreign Trade Credits Corporation) agreed to loan the $150,000 for one year, that it was not intended to be repayable “ On Demand ” and that these words were inserted to cover up usury and give an appearance of compliance with section 379. This the defendants attempt to establish factually through an affidavit by defendant Richter who alone negotiated the loan. Richter’s affidavit shows that plaintiff is an affiliate of an Israeli bank (Bank Leumi le-Israel B. M.) whose New York City branch office is plaintiff’s office also. All Richter’s dealings were with a man named Spinrad who was an officer of the bank but whose position with, and authority to speak for, plaintiff corporation does not appear, from this record. The Richter affidavit shows that application for the $150,000 one-year loan was made to Bank Leumi and that he was told by Spinrad that the bank could not accommodate him but that the bank’s finance company (plaintiff) might do so and that Richter should send plaintiff an application in letter form which Richter did, as a result of which he was told by Spinrad on November 14, 1962 that plaintiff had agreed to make the requested $150,000 loan. The minutes of the November. 14, 1962 meeting of plaintiff’s credit committee (of which Spinrad was a member) records action on the loan application as follows: “
 
 Morton J.
 
 Richter—Applies for a $150,000 loan secured by various over-the-counter securities and three unlimited guarantees by J. Wolf, J. Eckhaus, L. Spilky. Rate 10% maturity-demand.” Minutes of an earlier (November 7) meeting of this credit committee show that defendants had applied to plaintiff “ for $150,000 loan for one year” but the answering affidavit of Strauss, plaintiff’s president, says that the loan was not approved on November 7, that an unsuccessful effort was later made to get participation from other finance companies and that the application was resub
 
 *173
 
 mitted to plaintiff’s credit committee which approved it but on the basis of a “ demand loan payable at 10% interest ” and that no one had any authority to change these terms.
 

 Richter swears in his affidavit opposing summary judgment that when the transaction was being closed and Richter noticed the
 
 “
 
 On Demand’ ’ language in the note he demurred, saying that the loan was to be for a minimum of a year but that Spinrad assured him “ that this was just a matter of form, but that there was no question but that this loan was for a year ”. Spin-rad by affidavit swore that he had never made any such statement or promise and plaintiff’s employee Gross who was present at the closing also denied on oath that there was any such promise or agreement by Spinrad.
 

 It is of course no defense here that plaintiff made the note payable on demand to avoid usury and to take advantage of the exempting statute
 
 (Dunham
 
 v.
 
 Cudlipp,
 
 94 N. Y. 129;
 
 Jenkins
 
 v.
 
 Moyse,
 
 254 N. Y. 319). The primary question is not whether Spinrad made the statements ascribed to him by defendant Richter (or whether he was authorized to make them). The rule of law which defeats defendants and makes this summary judgment valid is that which makes parol evidence inadmissible to vary the terms of a written instrument. Acceptance of defendants’ version of the transaction could be accomplished only by letting defendant Richter give oral evidence directly contradicting the clear terms of a written agreement.
 
 Thomas
 
 v.
 
 Scutt
 
 (127 N. Y. 133, 138), cited by defendants, is direct authority against them on this point. This is not a case like
 
 Millerton Agway Coop.
 
 v.
 
 Briarcliff Farms
 
 (17 N Y 2d 57, decided Feb. 24, 1966) where we held that oral proof could be admitted to show that the written pact was obtained by a fraud in its inducement. Here defendants actually got what they wanted—credit for a year — but are now trying to enforce a forfeiture of the whole loan by proof that while the note was payable “ On Demand” there was in fact an oral agreement for a one-year term.
 

 Since the proof on which defendants relied to defeat summary judgment is inadmissible under the parol evidence rule it is unnecessary to deal with plaintiff’s point that the record lacks proof of any authority to bind plaintiff to the alleged one-year term.
 

 
 *174
 
 One other of defendants’ points should be discussed. They argue that this loaning transaction did not meet the requirements of section 379 of the General Business Law since the securities deposited as collateral had a value of about 40% only of the full amount of the note. The result was, they say, that they did not amount to
 
 ‘ ‘
 
 collateral security ’ ’ for the indebtedness as required by the statute. But there is nothing in the statute requiring such a reading. We need not speculate on what the answer would be if the collateral had only a nominal value or a value utterly disproportionate to the amount loaned. If the lender accepts as security property of a substantial value and of the kind required by the statute, that should satisfy its requirements.
 

 The order should be affirmed, without costs.
 

 Judges Ftjld, Yah Voorhis, Burke, Scileppi, Bergan and Keatthg concur.
 

 Order affirmed.