Shelden S. Levy, J.
Is a bank savings account passbook "an instrument for the payment of money only”? This is the simple, but previously undetermined issue, posed by the instant application.
Plaintiff moves for summary judgment in lieu of complaint, pursuant to CPLR 3213, in this action to secure allegedly his own funds on deposit for the past 14 years with defendant bank or its predecessor.
In March, 1960, plaintiff, an attorney at law, claimedly opened a savings account at the Bensonhurst National Bank of Brooklyn in the name "Wynne Stern, as attorney”, in the sum of $5,000. Interest was credited in November, 1960, and no further transactions were recorded in the account thereafter. Some years later, defendant bank became the successor-in-interest to Bensonhurst National.
It was only after plaintiff suffered a recent heart attack in 1974, that one of his children, searching through his effects, discovered the subject passbook for said account. Up until that time, plaintiff admittedly did not remember or was unaware of the existence of the account. Defendant bank, however, after apparently diligent and lengthy search, has been unable to discover any present records of this account.
Plaintiff asserts that from 1960 on, he maintained several bank accounts with Bensonhurst National and with defendant when it took over Bensonhurst National. These accounts, he claims included the subject account; an account in the name "Wynne Stern, Special”, discontinued in the mid-1960s; a regular checking account in the name "Wynne Stern”; and a partnership account denominated "Wynne Stern and Irving Lentnek d/b/a Catón Park Nursing Home”, maintained from 1967 to 1970. It is noted, however, that the other three accounts were continually active and were continuously known to plaintiff.
Finally, defendant’s records disclose that, in 1965, plaintiff borrowed some $16,000 from it, pledging stock and an insurance policy as collateral. The loan was renewed through the early part of 1966.
Plaintiff now alleges that he remembers this account; that he is the person who opened the account; that it was opened with his own money, even though labeled "Wynne Stern, as attorney”; that it was not a trust or escrow account; and that the money was never withdrawn by himself or by anyone else.
*510 Defendant bank relies upon the claimed inapplicability of the procedure adopted by plaintiff to initiate this action pursuant to CPLR 3213, and alleges that it is disadvantaged by the nonexistence of any records concerning the account after 14 years. Moreover, and in all events, defendant asserts that triable factual issues are raised by the title of the account; by the lengthy period of inactivity; by plaintiff’s mere possession of a passbook in support of his cause; and by his interim loan and collateral pledge during a period when he allegedly had more than $5,000 on deposit.
The first question to be decided is whether plaintiff has properly commenced this litigation by motion. He has done so if the savings account passbook is "an instrument for the payment of money only.” If it is not, he must begin his action once more by the service of a formal complaint.
The problem of what constitutes "an instrument for the payment of money only” has long been a thorny one. "The reports of the Advisory Commission do not define this term nor is case law prior to the enactment of the CPLR helpful, as CPLR 3213 had no earlier counterpart” (4 Weinstein-KornMiller, NY Civ Prac, par 3213.02a). By virtue of case law since the effective date of the CPLR, the scope of CPLR 3213 has been broadened far beyond actions based upon notes only. On the other hand, attempts by attorneys to continue to expand the application of such section ad inñnitum also have been limited by the courts. Indeed, this legal and judicial "give-and-take” has oftimes resulted in conflicting case law — different courts affording or denying CPLR 3213 treatment to the same types of instruments.
Moreover, only within the past few months has some solid elucidation on the subject been forthcoming from our highest appellate court (see Interman Ind. Prods. v R.S.M. Electron Power, 37 NY2d 151).
Previously, each paper, each writing, each document; yea, each varied "instrument” was presented in court on a case by case basis and solemnly proffered "clearly” as a statutorily intended "instrument for the payment of money only” in a continual succession of bids to short-cut further even the normal, expedited summary judgment procedures (CPLR 3212).
Many such endeavors succeeded — usually involving some form of commercial paper evidencing a debt and unencumbered by extraneous requirements — and the following items *511 all have been held cognizable by the terminology of CPLR 3213 as instruments "for the payment of money only”:
Account stated: (Ace Office Cleaning Corp. v Brodsky, 81 Misc 2d 170; Brickman v Niagara Fruit Co., 65 Misc 2d 483);
Check: (L & O Homes v Brown, 67 Misc 2d 594);
Letter: (Baker v Gundermann, 52 Misc 2d 639);
Letter agreement: (Winter v Starr Factors, NYLJ, May 1, 1964, p 18, col 6);
Letter of credit: (Banco Tornquist v American Bank & Trust Co., 71 Misc 2d 874);
Mortgage foreclosure: (Sullivan County Nat. Bank of Liberty v President Hotel, 28 AD2d 618);
Nonnegotiable note: (Alport & Son v Hotel Evans, 65 Misc 2d 374; Louis Sherry Ice Cream Co. v Kroggel, 42 Misc 2d 21);
Promissory note: (Ranhand v Sinowitz, 26 NY 2d 232; Seaman-Andwall Corp. v Wright Mach. Corp., 31 AD2d 136; and numerous other cases);
Secured demand loan: (Leumi Fin. Corp. v Richter, 24 AD2d 855, affd 17 NY2d 166);
Sight draft: (Banco Portugues Do Atlantico v Fonda Mfg. Corp., 31 AD2d 122, affd 26 NY2d 642);
Unconditional guarantee of note: (Rhodia, Inc. v Steel, 32 AD2d 753; M. Gilston, Inc. v Ullman, 45 Misc 2d 6);
Undertaking to secure warrant of attachment: (Zunz v National Sur. Corp., 82 Misc 2d 408);
Workmen’s compensation lien: (Great Amer. Ins. Co. v Government Employees Ins. Co., 30 AD2d 743).
On the contrary, other forays into the same subject matter have not met with judicial favor — usually documents not calling solely for money payments or requiring additional acts by their very terms — and the following wide variety of cases have proclaimed that the subject instruments involved are not "for the payment of money only” within the meaning of the statute:
Account stated: (Interman Ind. Prod. v R.S.M. Electron Power, 37 NY2d 151);
Bailment: (Baker v Gundermann, 52 Misc 2d 639);
Bond and mortgage: (Kemp v Hinkson, 73 Misc 2d 76; New York Conference of 7th Day Adventists v 915 James St. Assoc., 63 Misc 2d 38);
*512 Chattel mortgage: (All-O-Matic Mfg. Corp. v Shields, 59 Misc 2d 199);
Check: (Estate of Silverman v Manufacturers Hanover Trust Co., 43 Misc 2d 675);
Contract down payment: (Lopez v Perry, 53 Misc 2d 445);
Employment contract: (Rickert v Packet Facilities, 35 AD2d 711);
Escrow agreement: (Vanni v Long Is. City Sav. & Loan Assn., 53 Misc 2d 453);
Escrow deposit: (Guele v Scaiano, 56 Misc 2d 1040);
Forged checks: (Signal Plan v Chase Manhattan Bank, 23 AD2d 636);
Insurance policy: (Holmes v Allstate Ins. Co., 33 AD2d 96);
Labor and material bond: (Kipp Bros. v Hartford Acc. & Ind. Co., 63 Misc 2d 788);
Lease guarantee: (Times Sq. Assoc. v Grayson, 39 AD2d 845);
Mortgage placement fee: (Wentz v Havendale Realty Co., 57 Misc 2d 139);
Mortgage prepayment clause: (Burnell v Peoples Sav. Bank of Yonkers, 54 Misc 2d 140);
Security under lease: (Embassy Ind. v SML Corp., 45 Misc 2d 91);
Separation agreement: (Wagner v Cornblum, 36 AD2d 427; Rivara v Rivara, 77 Misc 2d 743; Orenstein v Orenstein, 59 Misc 2d 565);
Services contract: (Nasti Sand Co. v Almar Landscaping Corp., 34 AD2d 554);
Unsigned IOU: (Channel Excavators v Amato Trucking Corp., 48 Misc 2d 429).
Nevertheless, having digested the abundance and variety of the foregoing cases "on both sides of the fence”, it must be reported that none is "on all fours” with the instant issue and few, except the Interman case, add even a semblance of aid in the present novel situation. Accordingly, the question whether a savings account passbook is "an instrument for the payment of money only” must be now treated on its individual merits. Initially, employing the analysis suggested recently by the Court of Appeals, the mere possession of and suit upon a savings account passbook would appear to require "something in addition to the defendant’s explicit promise to pay a sum of *513 money” (Interman Ind. Prods. v R.S.M. Electron Power, 37 NY2d 151, 155, supra), in order for the plaintiff to employ the procedural device of CPLR 3213 and to make out a prima facie case for absolute payment by the terms of the instrument. Coming to mind immediately are these additional factors, at least: that the plaintiff would have to show rightful possession of the passbook; that he was, indeed, the named owner thereof; that the account was not in a name that might raise a question as to the plaintiff’s legal entitlement to the entire amount on deposit; that no checks or other deposits were subject to clearance; and that there were no holds on or liens against any portion of the said account.
Moreover, the mere entry and addition of figures in the bankbook itself (now usually by machine and often computerized) is not the formal and explicit acknowledgment of a specific indebtedness by the party sought to be charged — normally characterized by a written signature to some variety of commercial paper (see, also, 5A NY Jur, Banks and Trust Companies, § 293). In fact, where mathematical or computation errors have been made in the recording of deposits in passbooks, it has been held that the depositor cannot profit and be unjustly enriched to the bank’s disadvantage merely because of such inadvertence (Shipman v Bank of State of N. Y., 126 NY 318).
Certainly, the savings account passbook is not a form of commercial paper; is not negotiable; is not signed by the party to be charged; is often erroneous in content and form; is not the formal and explicit acquiescence of money due, necessitated by the usual import of the statute; and is, in fact, nothing more than a book in which a depositor’s account is recorded by the bank. Even the possession of a savings passbook is not, in itself, adequate to establish the right to withdraw the moneys on deposit, as evidenced by the book, but is merely the physical manifestation of the debtor-creditor contractual relationship between the parties (see 5A NY Jur, Banks and Trust Companies, § 291).
Accordingly, under the guidelines annunciated in the Inter-man case, a savings account passbook is not "an instrument for the payment of money only” (CPLR 3213).
But beyond that, and independently, a savings account passbook in actuality is neither an "instrument” nor strictly conditioned upon "the payment of money only.” "An instrument has been conceived to be a formal written document, *514 evincing legal rights and duties (cf. People v Sansanese, 17 NY2d 302, 306)” (Interman Ind. Prods. v R.S.M. Electron Power, 45 AD2d 34, 35, affd 37 NY2d 151). An instrument within the intent of the statute is one which clearly, unequivocally and unconditionally sets forth the basis for liability and the particular liability involved. The key interpreting factor, in my view in this case, is that the subject passbook is not unequivocal and unconditional on its face or in its body. Instead of being an "instrument” in a plain reading of the statute, it is merely a record of a debtor-creditor relationship-contractual, if you will, as a loan arrangement between a depositor and a bank, but fraught with equivocations and conditions. In this regard, a mere perusal of the rules and regulation of any bank, which govern the issuance of passbooks, should prove most enlightening. However, since such rules and regulations usually are no longer printed in the passbook itself, but are now inconveniently posted some place on the bank premises, finding them may also prove an enlightening experience.
"While money on deposit in a bank is commonly considered to be property of the depositor, the relationship in fact between him and the bank is that of debtor and creditor, and the amount on deposit represents merely an indebtedness by the bank to the depositor” (5 NY Jur, Banks and Trust Companies, § 254; see also, Signal Plan v Chase Manhattan Bank, 23 AD2d 636, 637).
Moreover, for example, I myself — a long-time depositor — did not realize that everytime I made a withdrawal from my account, the money was only afforded forthwith because the bank impliedly waived a 60-day holding or investigation requirement. In addition, under the gratuitous arrangement into which I had entered, the money that I was withdrawing was not mine at all, since I had, by my initial and by each subsequent deposit, actually lent the money to the bank on terms — because of the economic situation and the bank’s superior bargaining position — most favorable to it.
The point is, of course, that a debtor-creditor relationship having been established by the depositor’s loan to the financial institution involved — the repayment of which is conditional at best — such depositor may not seek an immediate return of the deposited funds merely by the short-cut device of summary judgment in lieu of complaint.
Contrariwise, for this asserted breach of contract by defend *515 ant bank in refusing now to make payment of the moneys on deposit, plaintiff must file a formal complaint and permit defendant to interpose a formal answer wherein any potential defenses, as asserted herein in opposition, may be set forth.
Thereafter, of course, following the joinder of issue, and as plaintiff may be advised by virtue of the pleadings involved and the evidence available to be marshalled, he may again seek summary relief in proper form (CPLR 3212; see, also, Siegel, Practice Commentaries, McKinney’s Cons. Laws of NY, Book 7B, CPLR 3213:4, p 832).