MARINE MIDLAND BANK-SOUTHERN, Respondent-Appellant, v BRADBURY K. THURLOW et al., Appellants-Respondents.

Third Department, November 24, 1976

*James L. Burke* for appellants-respondents.

*Denton, Moseson & Keyser (Richard Denton* of counsel), for respondent-appellant.

HERLIHY, J. On January 31, 1969, the defendants signed and delivered to the plaintiff (hereinafter referred to as "bank") their notes totaling $100,000 with interest at 7% payable on August 1, 1969. Also, on that date, the defendants executed in favor of the bank a pledge or security agreement whereby they pledged $100,000 of Conelec, Inc. convertible debentures and certain shares of stock of Scan-data Corporation and Data-Ram Corporation. On August 1, 1969, the original note was renewed or replaced by a *demand* note in the amount of $100,000 with interest at 9%. On April 17, 1973 the bank "called" or demanded payment of the August 1, 1969 note and thereafter commenced this action to recover the unpaid balance plus interest.

Among other things, the complaint alleges that the note which is being sued upon is a "re-casting" of the prior January 31, 1969 loan and that it was secured by a pledge of

negotiable instruments within the meaning of subdivision 3 of section 108 of the Banking Law. The defendants in their answer specifically deny the allegation that the loan was made pursuant to subdivision 3 of section 108 of the Banking Law and further assert a counterclaim for usury specifying that there was no loan upon negotiable instruments. The defendants also asserted that contrary to an agreement between themselves, the bank, and a third party, certain collateral security had been liquidated by the bank and the proceeds misapplied by the bank.

The bank moved for summary judgment and Special Term found that because of the parol evidence rule the defendants had failed to establish their affirmative defense and granted partial summary judgment in favor of the bank for the balance due on the note of $95,000. However, Special Term found an issue of fact present as to the usury counterclaim and, thus, denied summary judgment dismissing the counterclaim.

The issues upon this appeal are whether or not the parol evidence rule precludes the defendants from establishing that the bank misapplied the proceeds of collateral security held by it and, further, whether or not Special Term properly denied summary judgment in favor of the bank dismissing the usury counterclaim.

## I—USURY

No one disputes that the August 1, 1969 note exceeded the amount of interest permitted by subdivision 1 of section 108 of the Banking Law. However, subdivision 1 provides for exceptions to its interest limitations and subdivision 3 of the said section 108 provides as follows:

"Upon advances of money, repayable on demand, to an amount not less than five thousand dollars, made upon documents of title within article seven of the uniform commercial code or negotiable instruments within article three or article eight of the uniform commercial code pledged as collateral security for such repayment, any bank or trust company may receive or contract to receive and collect as compensation for making such advances any sum which may be agreed upon by the parties to such transaction."

Special Term after noting that there was no authority on the subject held that in order to qualify for a rate of interest

fixed pursuant to subdivision 3 all the collateral pledged for the loan must be of such a nature as to separately meet the specifications of instruments as specified in that statute. In accordance with its interpretation of subdivision 3, the court then found that as to the Conelec, Inc. convertible debentures there was a question of fact as to their meeting the requirements of registration as set forth in section 8-102 of article 8 of the Uniform Commercial Code and for this reason denied summary judgment.

The bank contends that Special Term erred in construing subdivision 3 so as to preclude its applicability when the collateral pledged for a loan is not solely collateral meeting the description set forth in the statute.

In the case of *Leumi Fin. Corp. v Richter* (17 NY2d 166) the court had before it a loan of $150,000 secured by pledges of corporate stock *and* personal guarantees of payment by three persons other than the borrower. The case involved a question of usury involving the interpretation of former section 379 of the General Business Law (now General Obligations Law, § 5-523). The court held that although the stock pledged as security and which met the requirements of the statute was only worth about 40% of the full amount of the note, it met the requirements of the statute. The court stated (p 174): "[i]f the lender accepts as security property of a substantial value and of the kind required by the statute, that should satisfy its requirements." Insofar as the question of whether or not a bank is precluded from accepting nonspecified security and specified security in complying with subdivision 3, there is no distinction between the provisions of former section 379 of the General Business Law and subdivision 3. Subdivision 3 does not upon its face preclude a mix of specified collateral and nonspecified collateral and to so interpret it as being preclusionary goes beyond a mere literal reading of the statute.

For the foregoing reasons we reject the conclusion of Special Term that in order to qualify for the provisions of subdivison 3 of section 108 of the Banking Law the *sole* security pledged must be those items specified in the statute. There is no dispute that at least a portion of the pledged securities did qualify and were of a substantial value.

However, upon the face of the pleadings a question remains as to whether or not any money was advanced as required by the statute and which was repayable on demand.

The initial loan of January 31, 1969 was a "time" loan and

would not qualify as a demand loan as required by the said subdivision 3. Pursuant to the January 31, 1969 loan the entire proceeds were "advanced" prior to the demand note of August 1, 1969 and which latter note is the subject of these proceedings. The bank had pleaded that the August 1, 1969 transaction was merely a "re-casting" of the prior loan and the note upon its face does not recite that it is for an advance of money as is specifically required by the said subdivision 3. The present record does not establish that the demand note issued in August of 1969 resulted in a cancellation of the original indebtedness. If the Legislature had intended to permit banks to avoid the prohibition of subdivision 1 of section 108 by the simple renewal of notes representing an indebtedness wherein the transaction is only a modification of the terms of payment together with an increased interest rate, it is doubtful that the language *"Upon advances of money, repayable on demand"* would have been used (emphasis supplied). There are questions of fact to be resolved. Accordingly, the bank's motion for summary judgment for interest and to dismiss the counterclaim was properly denied.

## II—PAROL EVIDENCE

The remaining issue is whether or not Special term erred in finding that parol evidence precluded the defense of a misapplication of collateral security.

The record establishes that as between the defendants and the bank there is a note for $100,000 payable on demand by defendants and a security agreement dated January 31, 1969. The security agreement refers solely to the convertible debentures of Conelec, Inc. and the shares in Scan-Data Corporation and Data-Ram Corporation. Among other things, the security agreement has a paragraph numbered 9 and entitled "Miscellaneous" which provides in part in its subdivision (a) as follows: "Pledgor [defendants] authorizes Secured Party [bank], without notice or demand and without affecting Pledgor's obligations hereunder, from time to time * * * (ii) to take from any party and hold collateral (other than the Collateral) for the payment of the indebtedness or any part thereof, and to exchange, enforce or release such collateral or any part thereof".

Before the note and security agreement of the defendants were executed, the bank had knowledge that the purpose of the loans was to finance a purchase of convertible debentures

of Conelec, Inc. by the defendants in the same amount as the loan. There is evidence in the record from which it could be found that there was an agreement between the defendants and Conelec, Inc., with knowledge on the part of the bank that the machinery and equipment of Conelec were to be pledged as primary security for the loan. On January 23, 1969 the representative of Conelec with whom the defendant and the bank representatives had dealt in regard to the Conelec debentures sent a letter to the bank in which he recites that Conelec is giving a security interest in its equipment to secure "the obligation of each of the said [Conelec] $50,000 convertible debentures". The letter goes on to recite certain restrictions on the manner in which the security is to be utilized if the defendants should default in their loans.

The bank did credit the security of Conelec to the pledge supporting the defendants' loan January 31, 1969, but thereafter withdrew the Conelec pledge from defendants' loans in May of 1970. Pursuant to the terms of paragraph 9 (a) of the defendants' pledge agreement, the bank was authorized to withdraw the Conelec security and to permit parol evidence would render the agreement a nullity in the absence of any fraud and none is alleged.

However, the parol agreement alleged herein is not solely that the equipment of Conelec was to be pledged as collateral security for the defendants' loan, but rather that it was being pledged as security for the debentures which were in turn to be held by the bank as security for the loan. While it may be that the equipment of Conelec was being pledged as collateral security for the loan to defendants, the present record unequivocally establishes that there was also a pledge to secure the debentures themselves with the equipment. This latter pledge would be separate and distinct from the security agreement of defendants with the bank and is not in any way within the parol evidence rule which applies to the loan transaction with defendants by the bank.

The letter from Conelec dated January 23, 1969 and referred to hereinabove recites that one of the purposes of the equipment pledge is to secure the debentures. The letter also states that it is an inducement for the bank to make a loan to the defendants and goes on to recite that in the event of a default by the defendants the equipment pledge was to be utilized to pay such note only after the bank had proceeded

against whatever other security the defendants had pledged as well as the defendants personally.

The letter and other evidence in the record would be sufficient to establish a pledge from Conelec to secure the debentures themselves and also to secure the defendants' loan. As to the loan, the bank had the power to release the Conelec security. However, there is no writing by the defendants to establish such a power in regard to security for the debentures. Special Term found that the January 23, 1969 letter of Conelec represented a written portion of an integrated agreement between Conelec and the bank as to a pledge and under such circumstances, the bank is bound by its terms. The bank in its brief contends that the letter is an integrated part of such agreement. To the extent that the letter contradicts the unlimited pledge of the equipment for indebtedness of Conelec to the bank, the construction given the letter by the bank establishes that the terms of the letter were to be followed. Accordingly, there is evidence to establish that the bank received the collateral from Conelec to secure the debentures and that as holder of the debentures the bank was representing not only its own interests but also those of the defendants as owners of such debentures. The parol evidence in this case does not vary the terms of the agreement between Conelec and the bank, but merely explains the transactions which are expressed upon the face of the letter (see *Traders' Nat. Bank of Rochester v Laskin*, 238 NY 535).

While it has been necessary to consider the evidence of the bank's loan to the defendants and their security pledge for such loan, the simple fact is that the present record unequivocally establishes a separate loan from the defendants to Conelec witnessed by Conelec's debentures. As to the debenture loan, there is nothing which would preclude parol evidence and the record contains evidence that the *debentures* were secured by a pledge of equipment by Conelec. The defense of the defendants is viable as to the bank not applying that equipment to the debentures which admittedly were in default prior to this action. There is no written agreement which in any way would incorporate this separate loan and pledge into the loan of the bank to the defendants except in the event of default by the defendants *prior* to a default by Conelec which event did not occur. If the bank holds or should hold the proceeds of the equipment for the benefit of the defendants, the defendants are simply seeking to have those proceeds

applied for their benefit to reduce the amount they owe on the note. The record contains no evidence that the defendants pledged their interest in the equipment to secure the bank's loan to them as the parol evidence rule would preclude such evidence.

The defendants pleaded as an affirmative defense that the Conelec security was accepted by the bank to cover the event of a default by Conelec on the debentures and there is probative evidence to support that allegation. The defendants have also offered probative evidence that at the time of the pledge the bank was not the owner of any debentures and that following a default by Conelec so as to render its debentures payable, the bank liquidated the security but instead of applying it to the debentures, it paid off some indebtedness of Conelec to it.

The bank has failed to establish that there is no provable defense to its action in this case as to a recovery of the full amount of the indebtedness alleged by it and, accordingly, the motion for summary judgment should have been denied in its entirety as to the bank.

The order should be modified, on the law, by reversing so much thereof as grants plaintiff's motion for summary judgment on the complaint and conditionally denies plaintiff's motion for summary judgment dismissing defendants' counterclaim; plaintiff's motion for summary judgment on both complaint and counterclaim denied; and, as so modified, order affirmed, with costs to defendants.

KANE, J. (concurring in part and dissenting in part). We agree with the majority decision except as it relates to the denial of the bank's motion for summary judgment for interest and to dismiss the counterclaim based on the defense of usury. We concur that Special Term erred in holding that the security pledged under subdivision 3 of section 108 of the Banking Law must consist solely of those items specified therein. However, we are unable to accept the majority view that a question of fact remains whether the note sued upon was for an advance of money. The record demonstrates that the original time note called for a legal rate of interest and that it was paid by the execution and delivery of the demand note upon which this action is founded. Accordingly, we conclude, as a matter of law, that the new obligation did represent an advance of money and complied with all of the other requisites of that statute permitting agreement between

the parties on the rate of interest to be charged. The counter-claim should be dismissed and plaintiff awarded interest on whatever amount of principal is hereafter determined to be due and owing.

MAIN and LARKIN, JJ., concur with HERLIHY, J.; GREEN-BLOTT, J. P., and KANE, J., concur in part and dissent in part in an opinion by KANE, J.

Order modified, on the law, by reversing so much thereof as grants plaintiff's motion for summary judgment on the complaint and conditionally denies plaintiff's motion for summary judgment dismissing defendants' counterclaim; plaintiff's motion for summary judgment on both complaint and counterclaim denied; and, as so modified, order affirmed, with costs to defendants.